UNITED STATES of America,
Plaintiff–Appellee,

v.

James Douglas ALEXANDER,
Defendant–Appellant.

No. 00–30348.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2002.

Filed April 19, 2002.

---

1. The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

Robert L. Stephens, Jr., Southside Law Center, Billings, MT, for the defendant-appellant.

Carl E. Rostad, Assistant United States Attorney, Great Falls, MT, for the plaintiff-appellee.

Before: ALARCON, and SILVERMAN, Circuit Judges, and TEILBORG,* District Judge.

ALARCON, Circuit Judge.

James Douglas Alexander appeals from the judgment of conviction, following a trial by a jury, of five counts of interstate communication of threats to injure others, in violation of 18 U.S.C. § 875(c). He seeks reversal on the ground that his indictment and conviction were obtained in violation of his Sixth Amendment right to counsel and the attorney-client privilege. He further contends that he was prejudiced by certain evidentiary rulings.

Alexander also maintains that the district court erred in calculating his sentence. We affirm the judgment of conviction because we conclude that the district court did not err in ordering Alexander's former counsel to present evidence of threats of bodily harm made by Alexander during attorney-client communications regarding pending criminal proceedings. We also uphold the district court's sentencing decision.

I

In 1992, Alexander was a member of the State Bar of Montana. In that year, the

* Honorable James A. Teilborg, United States District Judge for the District of Arizona, sitting by designation.

Federal Bureau of Investigation and the State Bar of Montana began investigations regarding alleged fraudulent representations made by Alexander to induce persons to pay him a retainer for his services in arranging the adoption of orphans from the Republic of Macedonia. The FBI's investigation resulted in the return of a federal mail and wire fraud indictment on June 18, 1997.

The Montana Supreme Court Commission on Practice's ("COP") inquiry into Alexander's alleged unethical behavior led to his disbarment. The COP investigation was conducted by Rockwood Brown, Gary Ryder, and Phillip Carter.

On October 24, 1997, the district court appointed Assistant Federal Defender Mark Werner ("Werner"), of the Federal Defenders of Montana, to represent Alexander on the mail and wire fraud charges. Werner was assisted by Russ Curry ("Curry"), an investigator for the Federal Defenders of Montana.

Alexander resided in Oklahoma following his pretrial release. He communicated with Werner and Curry over the telephone and by sending letters to Montana.

Between the fall of 1997 and June 4, 1998, Alexander made many threats to kill various individuals in his conversations with Werner and Curry. He threatened to harm Werner, Curry, Rockwood Brown, Gary Ryder, Phillip Carter, FBI Special Agent Scott Cruse, and Assistant United States Attorney Lori Harper. On one occasion he stated to Werner: "I have no problem coming in and killing half a dozen people, and taking them out, and I would testify to that in court."

On June 4, 1998, Curry reported to Werner that Alexander had stated in a tele-phone conversation that "he has only one wish, and that wish is to kill. To not only kill, but also to watch people being tortured before he kills them." Concerned for his own safety and that of others, Werner wrote a letter on the same date to a pretrial services officer of the United States Probation Office in which he stated: "I feel compelled to disclose to you that Alexander has stated threats against various individuals. In those threats he has expressed his intent to inflict harm and death."

On June 12, 1998, Werner filed a motion to withdraw as Alexander's attorney of record. On or about the same date, Werner was served with a grand jury subpoena duces tecum. He was ordered to appear before the grand jury on June 17, 1998 to testify regarding the threats made by Alexander, and to bring his office files and records relating to his communications with Alexander.

When Werner appeared before the grand jury, he asserted the attorney-client privilege on Alexander's behalf. The Government moved for an order compelling Werner to testify and to comply with the subpoena duces tecum. The district court granted the motion and ordered Werner to testify concerning the threats. He was also admonished, however, not to reveal any communication with Alexander that was not related to his threats. Werner redacted all information from his files and records that was not directly related to the threats.

Werner's testimony before the grand jury was limited by the prosecutor's questions to the threats uttered by Alexander. The grand jury indicted Alexander on one count of obstruction of justice and eight counts of communicating interstate threats to injure others.[1] The indictment was

---

1. Count I for obstruction of justice was dismissed by the district court on the Govern- ment's motion.

filed on August 25, 1998. The earlier indictment resulting from the alleged adoption-fraud charges was dismissed on August 27, 1998.

Werner and Curry testified at trial regarding Alexander's threats. Werner also testified that he informed Alexander that threatening persons with bodily harm was a criminal act. Alexander was convicted of Count II, telephone communication of threats to injure Werner; Count VI, telephone threats to injure Curry; Count VII, communication in interstate commerce of threats to Curry to injure Werner; Count VIII, threats made to Curry in interstate commerce to injure Rockwood Brown; and Count IX, threats made to Curry in telephone communications threatening to injure Gary Ryder. He was acquitted of the remaining counts. He was sentenced to serve 63 months in prison.

## II

We note at the outset of our discussion of Alexander's contentions that he does not argue that the evidence was insufficient to persuade a rational trier of fact beyond a reasonable doubt that he made threats to harm others in his communication with his attorney. Instead, Alexander seeks reversal of the judgment of conviction and dismissal of the indictment on the ground that his attorney violated his Sixth Amendment right to counsel and the attorney-client privilege by testifying before the grand jury and at trial, and disclosing his files pursuant to a subpoena duces tecum.

 "A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication. Whether the party has met these requirements is reviewed *de novo*." *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir.1997) (citation omitted).

 It is undisputed that Alexander was represented by Werner when he used the mails and the telephone to communicate his threats to harm others. Alexander has failed to demonstrate, however, the privileged nature of the threats during his communication with his attorney. "To prevent abuse and assure the availability of relevant evidence to the prosecutor, the privilege is limited to only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *In re Grand Jury Investigation,* 974 F.2d 1068, 1070 (9th Cir.1992) (quotation omitted).

The Supreme Court instructed in *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) as follows:

A defendant who informed his counsel that he was arranging to bribe or threaten witnesses or members of the jury would have no "right" to insist on counsel's assistance or silence. Counsel would not be limited to advising against that conduct. An attorney's duty of confidentiality, which totally covers the client's admission of guilt, does not extend to a client's announced plans to engage in future criminal conduct.

*Id.* at 174, 106 S.Ct. 988.

 We have previously held that communications with a person's legal counsel are protected only if they were made "in order to obtain legal advice." *Bauer,* 132 F.3d at 507. Alexander's threats to commit violent acts against Werner and others were clearly not communications in order to obtain legal advice. Had Alexander sought Werner's advice regarding the commission of future violent crimes, "[i]t is well settled that the attorney-client privilege does not extend to attorney-client communications which solicit or offer advice for the commission of a crime or fraud." *In re Grand Jury Investigation,* 974 F.2d at 1071.

The record shows that Werner scrupulously protected Alexander's privileged communications. When summoned by the grand jury, he asserted the attorney-client privilege and refused to testify regarding Alexander's threats or to surrender his files. The district court ordered him to testify and to produce documents concerning the threats, but not to disclose any privileged communications.

■ Alexander has failed to demonstrate that Werner divulged any privileged communications in his testimony before the grand jury or at trial pertaining to Alexander's defense against the charges in the adoption-fraud indictment. The record also shows that Werner redacted all communications from his files that did not refer to Alexander's threats. Werner appeared before the grand jury as a percipient witness to criminal activity, not as Alexander's defense counsel concerning the pending adoption-fraud indictment. Accordingly, Werner's testimony regarding Alexander's threats to commit *future* violent crimes against Werner and others was not protected by the attorney-client privilege nor did it deprive Alexander of his Sixth Amendment right to counsel regarding the adoption-fraud charges.[2]

### III

Alexander argues that the district court erred in excluding evidence of an alleged drug conspiracy or the adoption-fraud charges. Before trial, the Government filed a motion, to exclude evidence of Alexander's "assertion that his prosecution is a result of some conspiracy rooted in drug-trafficking activities in northeastern Mon-

tana." In his response, Alexander argued that the Government had learned of the existence of the drug conspiracy in violation of the attorney-client privilege. The district court granted the Government's motion. Alexander was ordered not to offer any evidence relating to "(1) the defendant's claim that his prosecution is a result of a conspiracy rooted in drug-trafficking activities in northeastern Montana and (2) the defendant's involvement in the adoptions from Macedonia."

■ Alexander maintains that the exclusion of this evidence impaired his ability to present relevant state-of-mind evidence and prevented him from establishing several affirmative defenses. Alexander did not present these theories to the district court. Therefore, these contentions were forfeited and cannot be asserted for the first time on appeal in the absence of a demonstration of plain error. *United States v. Ross,* 206 F.3d 896, 899 (9th Cir.2000). To satisfy the plain-error standard, Alexander must show that there was (1) an error, (2) that is "clear" or "obvious," (3) that affected his substantial rights, and (4) that the "error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 466–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quotation omitted).

### A.

■ Alexander first argues that the excluded evidence prevented him from establishing a prima facie case of selective or vindictive prosecution. To demonstrate the existence of a prima facie case for

---

**2.** During oral argument, Appellant's counsel asserted that the failure to notify Alexander of Werner's pending testimony before the grand jury violated Alexander's rights under the Due Process Clause. This issue was not presented in the opening brief. For that reason, the

Government has not had the opportunity to respond to this issue. We decline to reach this issue because "arguments not raised by a party in its opening brief are deemed waived." *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir.1999).

selective prosecution, a defendant must present evidence that: "(1) others similarly situated were not prosecuted, and (2) the prosecution was based on an impermissible motive." *United States v. Nelson,* 137 F.3d 1094, 1105 (9th Cir.1998). Similarly, a prima facie case for vindictive prosecution requires that a defendant "prove an improper prosecutorial motive through objective evidence before any presumption of vindictiveness attaches." *United States v. Montoya,* 45 F.3d 1286, 1299 (9th Cir. 1995). Alexander has not demonstrated that other similarly situated persons were not prosecuted. Likewise, Alexander did not offer any evidence that the Government had an improper motive in prosecuting him for making violent threats against Werner and others.

### B.

Alexander also contends that the excluded evidence was admissible to establish the defenses of duress or justification. To establish the defense of duress, a defendant must present evidence that shows "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm." *United States v. Moreno,* 102 F.3d 994, 997 (9th Cir.1996). To support the defense of justification a defendant must demonstrate that "(1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm." *United States v. Lemon,* 824 F.2d 763, 765 (9th Cir.1987). Alexander argues that the threat of incarceration constitutes a potential for serious bodily injury and that he could have estab-

lished at trial that he threatened his attorney because of a "well-grounded fear that the ineffectiveness" of his attorney would lead to that result. The threat of incarceration, however, "is not sufficient coercion to excuse the commission of a crime." *Phillips v. United States,* 334 F.2d 589, 590 (9th Cir.1964). In addition, Alexander has failed to show that he did not have any reasonable legal alternatives to avoid imprisonment, such as bringing a renewed request to the district court for substitution of counsel. Alexander has failed to demonstrate that the district court erred in granting the motion in limine.

### IV

Alexander raises several objections to the district court's calculation of his sentence under the United States Sentencing Guidelines. "We review the district court's application of the Sentencing Guidelines to the facts of a particular case for an abuse of discretion." *United States v. Leon–Reyes,* 177 F.3d 816, 824 (9th Cir. 1999). The district court's factual findings during sentencing are reviewed for clear error. *Id.* The district court's interpretation of the Sentencing Guidelines is reviewed de novo. *United States v. Caterino,* 957 F.2d 681, 683 (9th Cir.1992).

### A.

Alexander first argues that the district court improperly considered the dismissed adoption-fraud indictment in enhancing his sentence. The record reveals, however, that the district court did not use the adoption-fraud charges as an enhancement factor. The district court referred to the adoption-fraud charges in connection with its decision to impose a sentence at the top of Alexander's guideline range. The imposition of a sentence that is within the correctly applied guideline range is not

reviewable on appeal. *United States v. Pelayo–Bautista*, 907 F.2d 99, 101 (9th Cir.1990).

### B.

■ Alexander further asserts that the district court improperly applied a two-point offense-level enhancement under U.S.S.G. § 2A6.1(b)(2) for threatening each victim. He argues that § 2A6.1(b)(2) does not apply since there is no evidence that he intended to carry out his threats. The two-point enhancement provided by § 2A6.1(b)(2) does not, however, require any evidence of intent to carry out the threats.[3] Indeed, when there is evidence of such intent, a six-point enhancement is prescribed under § 2A6.1(b)(1).[4] Thus, Alexander's argument is without merit and is rejected.

### C.

■ Alexander also contends that the district court improperly used the "grouping rules" under U.S.S.G. § 3D1.2[5] to increase his offense level because the district court had already increased the offense level for multiple threats under § 2A6.1(b)(2). The district court used § 3D1.2 to group the two counts that involved Werner. The district court did not group the remaining three counts, each of which involved a different victim. Alexan-

der argues that all five counts should have been treated, for purposes of grouping and determining his offense level, as a single criminal episode. Alexander provides no authority for his position that a multiple conviction enhancement under § 3D1.2 cannot accompany the two-level enhancement for multiple threats under § 2A6.1(b)(2). Nothing in the Sentencing Guidelines suggests that Alexander's argument is correct. To the contrary, the commentary to § 2A6.1 states that "multiple counts involving making ... [threats] to the same victim are grouped together under § 3D1.2.... Multiple counts involving different victims are not to be grouped under § 3D1.2." U.S.S.G. § 2A6.1 cmt. n. 2. The district court correctly followed the Sentencing Guidelines in grouping the two counts involving Werner, and by not grouping the three remaining counts involving threats to different victims.

### D.

Alexander maintains that the district court erred in applying the three-level "official victim" enhancement under U.S.S.G. § 3A1.2(a)[6] to the two counts that involved Alexander's threats toward Rockwood Brown and Gary Ryder. The district court applied the official victim enhancement because Brown and Ryder were

---

3. Section 2A6.1(b)(2) provides:

 If the offense involved more than two threats, increase by 2 levels.
 U.S.S.G. § 2A6.1(b)(2).

4. Section 2A6.1(b)(1) reads as follows:

 If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels.
 U.S.S.G. § 2A6.1(b)(1).

5. Section 3D1.2 states in pertinent part:

 All counts involving substantially the same harm shall be grouped together into a single Group.... Specifically excluded from

the operation of this subsection are: all offenses in Chapter Two, Part A.... Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection.
U.S.S.G. § 3D1.2.

6. Section 3A1.2(a) provides:

 If ... the victim was a government officer or employee; a former government officer or employee; or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status, ... increase by 3 levels.
 U.S.S.G. § 3A1.2(a).

members of the Montana Supreme Court Commission on Practice, which oversaw Alexander's disbarment from the State Bar of Montana. Alexander argues that the official victim enhancement cannot apply to state employees, such as Brown and Ryder, because § 3A1.2(a) only applies to victims who are federal officials.

Alexander cites *United States v. McNeill*, 887 F.2d 448 (3d Cir.1989) and *United States v. Bailey*, 961 F.2d 180 (11th Cir.1992) in support of this proposition. His reliance on these decisions is misplaced. Neither case discusses the question whether § 3A1.2(a) applies to state officials who are the victims of criminal conduct. In *McNeill,* the victim was a federal probation officer. 887 F.2d at 450. In *Bailey* the victim was a postmistress employed by the United States Postal Service. 961 F.2d at 181. The appellant in *Bailey* conceded that a post-mistress is a federal official. *Id.* at 182.

■■■ The question whether § 3A1.2(a) applies to state officials is one of first impression in this circuit. We begin in our analysis of this issue by noting that § 3A1.2(a) does not expressly limit the term "government officer or employee" to federal officers and employees. It is black-letter law that "[i]f the language of a guideline is unambiguous, its plain meaning controls." *United States v. Gonzalez,* 262 F.3d 867, 869 (9th Cir.2001).

■■■ The term "government" is defined as "the officials collectively comprising the governing body of a political unit and constituting the organization as an active agency." *Webster's Third New International Dictionary* 982 (1976). The word "official" refers to a person "holding an office or serving in a public position." *Id.* at 1567. It is undisputed that the COP is a unit of that state's government. It is also uncontested that Brown and Ryder were employed by the COP. Therefore, it

is clear that they were government officials at the time that Alexander uttered his threats to injure them. We are persuaded that the plain meaning of the words used in § 3A1.2(a) requires a district court to apply it to state officials or employees who are the victims of a federal crime.

Our conclusion is supported by those circuits that have confronted this issue. In *United States v. Stewart,* 20 F.3d 911 (8th Cir.1994), the victim was the deputy director of the Arkansas Department of Corrections. *Id.* at 912. The Eighth Circuit rejected the contention that § 3A1.2(a) did not apply to officers of a state government. *Id.* at 918. The court stated: "Stewart has cited no authority for this argument, and we see absolutely no basis for limiting the guideline in the manner Stewart suggests." *Id.*

■■■ In *United States v. Hudspeth,* 208 F.3d 537 (6th Cir.2000), the appellant pled guilty to the crime of mailing threatening communications to a prosecuting attorney for Hamilton County, Ohio. *Id.* at 538. On appeal, Hudspeth maintained that § 3A1.2(a) did not apply to a county government employee. *Id.* at 538–39. The Sixth Circuit disagreed and held as follows:

We believe both that the meaning of § 3A1.2(a) is clear and that the history of the provision affirms our conclusion that conduct motivated by the work of state and local employees, or by their status as employees, is covered by this guideline.

*Id.* at 539. "[A]bsent a strong reason to do so, we will not create a direct conflict with other circuits." *United States v. Chavez–Vernaza,* 844 F.2d 1368, 1374 (9th Cir. 1987).

■■■ Alexander also asserts that the district court should not have applied the enhancement set forth in § 3A1.2(a) be-

cause § 2A6.1 of the Sentencing Guidelines and 18 U.S.C. § 875(c) already incorporate the status of the victim in setting the offense level. We rejected similar arguments in *United States v. Williams,* 14 F.3d 30 (9th Cir.1994). In *Williams,* we held (1) that the official victim enhancement in § 3A1.2(a) could be applied to sentences imposed under § 2A6.1; and (2) "that the proper comparison to determine whether impermissible double-counting occurred is between the applicable guidelines provisions, not between the guidelines provisions and the criminal code." 14 F.3d at 31–32 (quotation omitted). The district court did not err in applying § 3A1.2(a) to enhance Alexander's offense level on the counts involving threats to state officials.

### E.

■ Alexander further claims that the district court erred when it denied his request to depart downward. A review of the district court's statements at sentencing reveals that the district court considered Alexander's arguments for a downward departure in exercising its discretion to deny the request. "[A] district court's discretionary decision not to depart downward from the guidelines is not subject to review on appeal." *United States v. Morales,* 898 F.2d 99, 103 (9th Cir.1990). Therefore, we lack the power to review this contention.

### CONCLUSION

The disclosure of Alexander's threats did not violate Alexander's attorney-client privilege or deprive him of his Sixth Amendment right to counsel. The district court did not commit plain error in excluding evidence regarding the adoption-fraud charges and the alleged drug conspiracy. The district court did not abuse its discretion in calculating Alexander's sentence under the United States Sentencing Guidelines. Therefore, the judgment of conviction and the district court's sentencing decision are AFFIRMED.