**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Wilson Chucks OKIKE, aka Seal
A, Defendant—Appellant.**

**No. 01–50632.
D.C. No. CR–01–00016–MMM–1.**

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 25, 2002.*

Decided March 6, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Before CHOY, FERGUSON and BOOCHEVER, Circuit Judges.

### ORDER AND MEMORANDUM**

Wilson Chucks Okike was convicted of one count of wire fraud, in violation of 18

** This disposition is not appropriate for publication and may not be cited to or by the

U.S.C. § 1343, and one count of mailing lottery tickets and related material, in violation of 18 U.S.C. § 1302. The charges arose from Okike's operation of various telemarketing companies involved in the sale of lottery tickets ("the Lottery Companies"). He appeals his sentence, arguing that the following offense level adjustments were not supported by the record: 1) a twelve-level enhancement based on a total loss of $1,865,204 pursuant to U.S.S.G. § 2F1.1(b)(1)(M) (2000); 2) two two-level vulnerable victim enhancements under U.S.S.G. § 3A1.1(b)(1) and (2); and 3) a four-level enhancement for his aggravated role in the offense pursuant to U.S.S.G. § 3B1.1(a). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review the district court's interpretation of the Guidelines de novo. *United States v. Alexander*, 287 F.3d 811, 818 (9th Cir.2002). The district court's findings of fact are reviewed for clear error. *See, e.g., United States v. Williams*, 291 F.3d 1180, 1196 (9th Cir.2002). Its application of the Guidelines to the facts of the case are reviewed for an abuse of discretion. *Alexander*, 287 F.3d at 818. We also review the district court's evaluation of the reliability of evidence for an abuse of discretion. *United States v. Berry*, 258 F.3d 971, 976 (9th Cir.2001).

### I. *Amount of Loss*

Okike argues that the district court erred in finding that the total amount of loss was $1,865,204 because: 1) the Government did not meet its burden of proof for establishing the amount of loss; 2) the district court should not have considered the losses of victims who were not residents of the United States; and 3) the

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

district court should not have included the amounts the Lottery Companies paid in refunds and returns.

■ In determining the amount of loss, the district court "need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, commentary at n. 8. The district court adopted the base figure of $1,403,130 used in Okike's Presentence Report ("PSR"). This amount was based upon figures that the defense provided the Probation Office. Okike apparently did not intend this to be a concession that the amount of loss was $1,403,130. However, the district court could make a reasonable estimate of the amount of loss based on the figures provided by the defense. *Cf. United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir.1999) (holding that the district court's loss valuation, which was based on documents prepared by the defendant, was not clearly erroneous).

■ Okike also argues that some of the victims whose losses were included in the $1,403,130 figure were not United States residents and that the district court should not have considered their losses. Even assuming, *arguendo,* that some of Okike's victims were not United States residents, the district court did not err in including their losses within the total amount of loss. Okike's offenses against the foreign victims were part of the same course of conduct as the offense of conviction and met the Guidelines definition of relevant conduct. *See* U.S.S.G. § 1B1.3(a)(2); *cf. United States v. Levario–Quiroz,* 161 F.3d 903, 906 (5th Cir.1998) (holding that the defendant's foreign offenses could not be considered because they did not fall within the Guidelines definition of "relevant conduct").

■ Okike also argues that the district court erred in including the amounts paid to the victims in the form of refunds and returns as part of the total amount of loss. Returns were processed where, for example, the victim's account had insufficient funds, the victim's account number was invalid, the victim revoked authorization for the transfer, or the account was closed. None of these circumstances change the fact that Okike intended to defraud them of those amounts. *See United States v. Blitz,* 151 F.3d 1002, 1012 (9th Cir.1998). The refunds were properly considered as part of the total intended loss. *See* U.S.S.G. § 2F1.1, commentary at n. 7. Further, the district court properly considered the amounts returned to the victims, apparently in the form of lottery prizes. As in *Blitz,* the amount of monies recovered by the victims was "small" in comparison to the amounts paid by them. *See Blitz,* 151 F.3d at 1005. For example, one of Okike's victims, who spent almost $48,000 on lottery packages, received only $274 in lottery winnings. Thus, it can be reasonably inferred that the prizes were paid for the purpose of making the Lottery Companies appear legitimate and to delay detection of their illegal activities. *See id.* at 1012. The district court did not err in adding the refunds and returns to the total amount of loss and the Government met its burden of proving the amount of loss by clear and convincing evidence. The district court properly imposed a twelve-level adjustment.

II. *Vulnerable Victims Adjustments*

■ The district court found that Okike knew or had reason to know that there were a large number of victims who were vulnerable because of their age or because they had been previously victimized or "reloaded." On appeal, Okike argues that, in making these findings, the district court improperly relied on co-defendant Basil Steeves's statement, which did not bear sufficient indicia of reliability. However,

even without Steeves's statement, there is clear and convincing evidence in the record that Okike knew or had reason to know that a large number of the victims were vulnerable because they had been previously victimized, often by Okike's own companies.[1] *See United States v. Ciccone,* 219 F.3d 1078, 1087 (9th Cir.2000) (affirming vulnerable victim adjustment where the victims were "repeatedly targeted for further fraudulent solicitations"); *United States v. Randall,* 162 F.3d 557, 560 (9th Cir.1998) (affirming adjustment where victims were "reloaded"). Okike's PSR stated that 1,411 victims transferred money to the Lottery Companies' account and that 527 of those people had been victimized more than once. The extensive reloading practice is established by the Government's supplemental sentencing exhibits, which include: forms used by Okike's telemarketers in which they asked potential victims questions about their prior telephone gambling experiences; Steeves's payroll sheets indicating that he, with Okike, re-victimized several customers; and a letter from one victim who described the multiple times Okike and Steeves called her and the many payments she made.

Okike also argues that the district court ignored the three declarations of his employees who stated that reloading was against company policy. However, the district court expressly rejected the declarations, finding that they were not credible evidence because they were brief and merely "conclusionary." Okike does not point to anything in the record which indicates that the district court's credibility finding was an abuse of discretion. The district court did not err in imposing the vulnerable victims adjustments.

### III. *Aggravated Role Adjustment*

Okike argues that the district court erred in imposing the four-level aggravated role adjustment because it was improperly based upon Steeves's statement. However, even without Steeves's statement, there is clear and convincing evidence in the record supporting the adjustment. Okike himself admitted in his plea agreement that he owned the Lottery Companies and that he directed the telemarketers' activities. Okike also controlled the Lottery Companies' electronic transfer account. Thus, there is clear and convincing evidence in the record that Okike both directed the activities of at least one "participant" and had management responsibilities over the Lottery Companies' assets. *See* U.S.S.G. § 3B1.1, commentary at n. 2. In addition, the district court did not err in finding that Okike's criminal activity was "otherwise extensive" because it involved an estimated 1,411 victims and at least $1.4 million in revenue. *See United States v. Leung,* 35 F.3d 1402, 1407 (9th Cir.1994) (stating that the sophistication and scope of a conspiracy may be considered in making "otherwise extensive" determination). The district court did not err in imposing the four-level aggravated role adjustment.

This case is resubmitted as of October 25, 2002.

AFFIRMED.

---

1. Therefore, we do not address the district court's alternate finding that the adjustments were warranted because many of the victims were vulnerable due to their ages.