# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

COSME MEDINA-VILLA, also known
as Cosme Medina-Maella,
            *Defendant-Appellant.*

No. 07-50396

D.C. No.
CR-06-00203-JAH-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
February 3, 2009—Pasadena, California

Filed May 28, 2009
Amended June 23, 2009

Before: Harry Pregerson, Susan P. Graber, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Wardlaw

7473

## COUNSEL

Michelle D. Anderson, Law Offices of Michelle D. Anderson, San Diego, California, for defendant-appellant Cosme Medina-Villa.

Karen P. Hewitt, United States Attorney, Christina M. McCall (on the brief), Assistant United States Attorney, and Mark R. Rehe, Assistant United States Attorney (at argument and on supplemental briefing), United States Attorney's Office, San Diego, California, for plaintiff-appellee United States of America.

---

## ORDER

Appellant's motion for an extension of time to file the petition for rehearing and/or petition for rehearing en banc is GRANTED. The petition shall be filed no later than July 22, 2009.

Appellee's request to amend the opinion is GRANTED. The opinion appearing at ___ F.3d ___, 2009 WL 1476981 (9th Cir. May 28, 2009), is amended as follows: On slip opinion page 6341, delete "Contrary to the government's argument," and capitalize "nothing."

IT IS SO ORDERED.

---

## OPINION

WARDLAW, Circuit Judge:

Cosme Medina-Villa ("Medina"), also known as Cosme Medina-Maella, returns to our court, again convicted of attempted reentry into the United States after removal in violation of 8 U.S.C. § 1326. He was sentenced to a sixty-month term of imprisonment and three years of supervised release, following a sixteen-level increase in his offense level for a prior conviction under California Penal Code section 288(a), which criminalizes lewd and lascivious acts on a child under fourteen. We must decide whether, in light of *Estrada-*

*Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc), a conviction under section 288(a) constitutes "sexual abuse of a minor," qualifying it as a "crime of violence" that warrants the sixteen-level increase under U.S.S.G. § 2L1.2. We hold that it does.

We must also decide whether the district court erred in denying (1) Medina's motion to dismiss the indictment grounded in the government's deportation of material witnesses without first informing Medina of his right to retain them, and (2) Medina's motion to suppress his initial statements to the field agent for failure to give *Miranda* warnings. We affirm the district court's rulings and, under *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), reject Medina's argument on appeal that his conviction and sentence are unconstitutional.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Medina, who was seen by a border patrol agent running from the fence between the United States and Mexico along with two other individuals, was apprehended after getting into the passenger seat of a parked car. Blocking the car's escape with his own parked vehicle, Agent Mills approached the suspects with his gun drawn and ordered the driver out of the car. Mills then asked Medina about his citizenship and immigration status, and Medina answered that he was a Mexican citizen with no immigration papers. Medina was then arrested, waived his *Miranda* rights, and was interrogated at a border patrol station. He told the agents that he was forced to cross the border under threat of physical harm. He explained that a smuggler tricked him to get him close to the border with the promise of work, obtained the phone number of Medina's family members and, under threat of injury, told them to pay $1,300. Medina also stated that he was kept in the smuggler's house for several days without food and that he was beaten when he tried to turn back from the fence. The border patrol agents then interviewed on the record the two other Mexican

nationals apprehended with Medina. After determining that the witnesses did not corroborate Medina's allegations of duress, the government deported them to Mexico. Neither Medina nor his counsel received an opportunity to interview the witnesses before they were deported.

Before trial, Medina moved to dismiss the indictment on the grounds that he was not advised of his right to retain material witnesses and that the government acted in bad faith in deporting the witnesses. After holding an evidentiary hearing, the district court denied the motion, finding that the government did not act in bad faith and that the deported witnesses would not have provided testimony favorable to Medina. Medina also moved to suppress the statements he made to Mills during the questioning immediately upon apprehension ("field statements"). Following another evidentiary hearing, the district court denied the motion, finding that Medina was not in custody during that time. The jury convicted Medina of attempted reentry into the United States after removal in violation of 8 U.S.C. § 1326.

Medina's prior criminal history was particularly relevant to the sentence imposed by the district court. In 1999, Medina— known at that time as Medina-Maella—was convicted of violating California Penal Code section 288(a), which prohibits lewd and lascivious acts on a child under fourteen, and was subsequently deported. He attempted reentry soon thereafter and was convicted under 8 U.S.C. § 1326, with a sixteen-level increase under U.S.S.G. § 2L1.2 for the prior section 288(a) conviction. In a published opinion, we upheld the district court's conclusion that a conviction under California Penal Code section 288(a) is a categorical "crime of violence," mandating the sixteen-level increase under U.S.S.G. § 2L1.2. *See United States v. Medina-Maella*, 351 F.3d 944 (9th Cir. 2003). Medina was again deported.

At issue here is Medina's second unlawful reentry. For this most recent violation of § 1326, the district court sentenced

Medina to sixty months' imprisonment and three years' supervised release, again applying the sixteen-level increase for the prior conviction of a "crime of violence," pursuant to U.S.S.G. § 2L1.2. The district court relied squarely on our *Medina-Maella* decision, but also noted that, "within the contemporary meaning, that offense . . . is categorically a crime of violence . . . even without *Medina*." Medina timely appealed.

## II. JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Alexander*, 287 F.3d 811, 818 (9th Cir. 2002).

We review de novo the district court's denial of a motion to dismiss the indictment for failure to retain a witness, and we review the district court's underlying findings of fact for clear error. *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1085 n.1 (9th Cir. 2000).

We also review de novo whether a defendant was entitled to *Miranda* warnings. *United States v. Galindo-Gallegos*, 244 F.3d 728, 730 (9th Cir. 2001). "Whether a person is 'in custody' for purposes of *Miranda* is a mixed question of law and fact warranting de novo review." *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (alterations and internal quotation marks omitted).

## III. DISCUSSION

### A. Sixteen-Level Increase for a Conviction under California Penal Code section 288(a)

Medina argues that his 1999 conviction under California Penal Code section 288(a) for lewd and lascivious acts with

a child under the age of fourteen does not warrant a sixteen-level increase in his offense level under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The district court, relying on *Medina-Maella*, held that a section 288(a) conviction constitutes a "crime of violence," which triggers the sixteen-level increase. We affirm the district court and hold that our recent en banc decision in *Estrada-Espinoza* does not undermine its conclusion.

[1] California Penal Code section 288(a) criminalizes the conduct of "[a]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." For a violation of 8 U.S.C. § 1326, the Sentencing Guidelines provide for a base offense level of eight and instruct that the offense level be increased by sixteen levels "[i]f the defendant previously was deported . . . after . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Guidelines' definition of "crime of violence" includes, inter alia, "sexual abuse of a minor." *Id.* at cmt. n.1(B)(iii).[1] In 2003, in an appeal involving the identical defendant and the identical crime as those before us now, we held that a conviction under section 288(a) "constitutes 'sexual abuse of a minor,' and is therefore a 'crime of violence' for purposes of U.S.S.G. § 2L1.2(b)(1)(A) (2002)." *Medina-Maella*, 351 F.3d at 947.

---

[1]The current version of the Guidelines, incorporating the November 2008 amendments, defines the following crimes of a sexual nature as "crimes of violence"—"forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, [and] sexual abuse of a minor." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The only relevant change from the 2006 version under which Medina was sentenced is the addition of the clarifying parenthetical defining "forcible sex offenses"; "sexual abuse of a minor" was then, and is now, an independent example of a "crime of violence."

**[2]** We reaffirm that decisional law defining the term "sexual abuse of a minor" in the sentencing context, U.S.S.G. § 2L1.2, is informed by the definition of the same term in the immigration context, 8 U.S.C. § 1101(a)(43)(A),[2] and vice versa, as established in *Medina-Maella*. Analyzing the term in U.S.S.G. § 2L1.2 in *Medina-Maella*, we expressly relied upon the analysis in *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999), which took into account the meaning of "sexual abuse of a minor" in 8 U.S.C. § 1101. *Medina-Maella*, 351 F.3d at 947. Further, *Estrada-Espinoza* established that "Congress intended 'sexual abuse of a minor' [in § 1101(a)(43)(A)] to carry its standard criminal definition." 546 F.3d at 1156. Nothing in *Estrada-Espinoza* overrules prior case law interpreting the provisions in a parallel manner. Moreover, the Supreme Court directs that "we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004). With this admonition in mind, we outline the historical treatment of section 288(a) and related laws in our circuit.

1. *Case Law Establishing Section 288(a) as a Crime of Violence*

Under the 1997 version of U.S.S.G. § 2L1.2, a sixteen-level increase was warranted if the conviction constituted an "aggravated felony"; thus, in the sentencing context, courts were required to refer to the definition of "aggravated felony" in 8 U.S.C. § 1101, which included then, as it does now, "sexual abuse of a minor," § 1101(a)(43)(A). In *Baron-Medina*, we reviewed whether section 288(a) proscribes "sexual abuse of a minor" as defined in § 1101(a)(43)(A). We first rejected "any suggestion that the federal sexual abuse laws, codified

---

[2]Title 8 U.S.C. § 1101(a)(43)(A) defines the term "aggravated felony" to include "sexual abuse of a minor." Commission of an "aggravated felony" increases the statutory maximum punishment for unlawful reentry under 8 U.S.C. § 1326(b)(2).

at Chapter 109A of the United States Code, limit the class of state laws reached by the term." *Baron-Medina*, 187 F.3d at 1146. Instead, we "interpret[ed] the undefined term 'sexual abuse of a minor' by employing the ordinary, contemporary, and common meaning of the words that Congress used." *Id.* (internal quotation marks omitted). Considering the "full range of conduct" covered by section 288(a), *id.* (internal quotation marks omitted), we determined that "[t]he conduct . . . indisputably falls within the common, everyday meanings of the words 'sexual' and 'minor,' " *id.* at 1147. We then held, categorically, that "[t]he use of young children for the gratification of sexual desires constitutes an abuse." *Id.* We thus concluded that a conviction under section 288(a) qualifies as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(A) because it constitutes "sexual abuse of a minor," and, therefore, warrants the imposition of a sixteen-level offense level increase. *Id.*

In 2001, the Sentencing Commission revised the Guidelines to provide a sixteen-level increase for "crimes of violence" and an eight-level increase for "aggravated felonies." U.S.S.G. § 2L1.2(b)(1) (2001). "Crime of violence" was defined to include "forcible sex offenses (including sexual abuse of a minor)." *Id.* at cmt. n.1(B)(ii)(II). Subsequently, in *Medina-Maella*, 351 F.3d 944, we considered the exact question posed here—whether a section 288(a) violation constitutes a "crime of violence" for purposes of U.S.S.G. § 2L1.2. We noted that the facts were remarkably similar to those in *United States v. Pereira-Salmeron*, 337 F.3d 1148 (9th Cir. 2003), in which we held that a conviction under a Virginia statute prohibiting carnal knowledge of a child between thirteen and fifteen was a "crime of violence" because the underlying conduct constituted "sexual abuse of a minor." *Medina-Maella*, 351 F.3d at 947. Expressly relying on *Baron Medina*, we concluded that the amendment to the Guidelines did not alter our conclusion that a violation of section 288(a) constitutes "sexual abuse of a minor." *Id.* We therefore held that Medina-Maella's conviction under section 288(a) "constitutes

'sexual abuse of a minor,' and is therefore a 'crime of violence' for purposes of U.S.S.G. § 2L1.2(b)(1)(A) (2002)." *Id.*

The Guidelines were revised again following *Medina-Maella* to list "sexual abuse of a minor" as an independent example of a "crime of violence." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2003) (changing the relevant definition of "crime of violence" from "forcible sex offenses (including sexual abuse of a minor)" to "forcible sex offenses, statutory rape, sexual abuse of a minor"). Then, in *United States v. Baza-Martinez*, 464 F.3d 1010, 1012 (9th Cir. 2006), *reh'g en banc denied*, 481 F.3d 690 (9th Cir. 2007), we considered whether a North Carolina statute that prohibits a person who is sixteen years of age or more and at least five years older than the victim from "taking indecent liberties" with a child under sixteen, N.C. Gen. Stat. § 14-202.1, punishes "sexual abuse of a minor," and is thus a "crime of violence" under U.S.S.G. § 2L1.2. "Employing the [*Taylor v. United States*, 495 U.S. 575 (1990),] categorical approach and considering the full range of conduct criminalized by" the statute, we held that it does not. *Baza-Martinez*, 464 F.3d at 1012. Central to our reasoning was the fact that the "statute prohibits conduct that is not necessarily physically or psychologically harmful, and therefore, is not necessarily 'abuse.'" *Id.* In so stating, we noted our agreement with *Baron-Medina*'s conclusions that " 'the use of young children for the gratification of sexual desires constitutes abuse,' " and that the conduct covered by section 288(a) is "undoubtedly psychologically harmful." *Id.* at 1015 (alteration omitted) (quoting *Baron-Medina*, 187 F.3d at 1147). By contrast, we concluded, the North Carolina statute "focuses on improper motivation" and "prohibits conduct that need not be *either* physically *or* psychologically harmful to the minor." *Id.* at 1016-17. Because the conduct punished by the North Carolina statute did not necessarily constitute "abuse," we declined to conclude that it constitutes a "crime of violence." *Id.* at 1017-18.

This line of cases reinforces the conclusion that a conviction under California Penal Code section 288(a) is a "crime of

violence" because it constitutes "sexual abuse of a minor." It also clarifies that we separate "sexual abuse of a minor" into three elements: whether the conduct proscribed by the statute is sexual; whether the statute protects a minor; and whether the statute requires abuse. It demonstrates that in our analysis of the conduct covered by section 288(a) and similar statutes, we define the term "abuse" as "physical or psychological harm" in light of the age of the victim in question. *See Baza-Martinez*, 464 F.3d at 1015 (noting that, under *Baron-Medina*, section 288(a) punishes "abuse" "because it requires use of young children, implying harmful or injurious conduct" (internal quotation marks omitted)); *United States v. Lopez-Solis*, 447 F.3d 1201, 1206 (9th Cir. 2006) ("The age affects whether the conduct the statutory rape law covers constitutes 'abuse.' "); *Valencia v. Gonzales*, 439 F.3d 1046, 1051 (9th Cir. 2006) (noting that the age of the victim affects whether a statute is categorically a "crime of violence"); *United States v. Pallares-Galan*, 359 F.3d 1088, 1100 (9th Cir. 2004) (distinguishing California Penal Code section 647.6(a), which criminalizes annoyance and molestation of minors under eighteen, from section 288(a), "particularly because [section 288(a)] applies only to minors of less than 14 years of age"); *Pereira-Salmeron*, 337 F.3d at 1154 ("[W]hen an older person attempts to sexually touch a child under the age of fourteen, there is always a substantial risk that physical force will be used to ensure the child's compliance." (internal quotation marks omitted)); *Baron-Medina*, 187 F.3d at 1147 ("The use of young children for the gratification of sexual desires constitutes an abuse.").

2.   *The Effect of Our En Banc Decision in* Estrada-Espinoza

**[3]** Recently, in *Estrada-Espinoza*, we considered "whether a conviction under any of four California statutory rape provisions . . . constitutes the aggravated felony 'sexual abuse of a minor' within the meaning of 8 U.S.C. § 1101(a)(43)." 546 F.3d at 1150. The statutes at issue were California Penal Code

sections 261.5(c), criminalizing intercourse with a minor more than three years younger than the perpetrator; 286(b)(1), criminalizing sodomy of a person under eighteen; 288a(b)(1), criminalizing oral copulation with a person under eighteen; and 289(h), criminalizing penetration by a foreign object of a person under eighteen. Applying the *Taylor* categorical approach, 495 U.S. at 602, we first determined "the generic elements of the crime 'sexual abuse of a minor.' " *Estrada-Espinoza*, 546 F.3d at 1152. Because Congress elected not to cross-reference a definition for "sexual abuse of a minor," we concluded that the reference in the statute carried the "standard criminal definition." *Id.* at 1156. We decided that we did not need to survey current criminal law to ascertain a federal definition "because Congress has enumerated the elements of the offense of 'sexual abuse of a minor' at 18 U.S.C. § 2243." *Id.* at 1152. Based on § 2243, we determined that "the generic offense of 'sexual abuse of a minor' requires four elements: (1) a mens rea level of knowingly; (2) a sexual act; (3) with a minor between the ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor." *Id.* To support our conclusion, we conducted a review of federal and state case law and the Model Penal Code, and concluded that "the congressional definition comports with 'the ordinary, contemporary, and common meaning of the words.' " *Id.* (quoting *Baron-Medina*, 187 F.3d at 1146).

**[4]** We clarified that "sexual abuse of a minor," as we defined it, is "a common title for offenses under state criminal codes," noting that "[i]n all cases [that we were considering], the offenses define what would, in more common parlance, be referred to as statutory rape." *Id.* at 1156. Indeed, each of the four statutory provisions at issue in *Estrada-Espinoza* penalized sexual offenses against persons under the age of eighteen, not just younger children. Therefore, our construction of the generic § 2243 definition of "sexual abuse of a minor" encompassed statutory rape crimes only—that is, sexual offenses involving older as well as younger adolescents, not crimes prohibiting conduct harmful to younger children spe-

cifically. Focusing on the "abuse" prong of the term, we concluded that our precedent and the precedent of our sister circuits treated these categories differently, "acknowledg[ing] a significant difference between sexual relations with someone under 16 and sexual relations with someone between the ages of 16 and 18." *Id.* at 1154. For example, we noted that "under national contemporary standards . . . sexual activity with a younger child is certainly abusive, [but] sexual activity with an older adolescent is not necessarily abusive." *Id.* at 1153; *see also United States v. Rayo-Valdez*, 302 F.3d 314, 319 (5th Cir. 2002) ("This court and others have held that sexual offenses by adults against children carry the inherent risk of force upon or injury to the child."). We found that "the assumption that a minor's legal incapacity implies that the proscribed sexual intercourse is non-consensual . . . may be valid where the minor is a younger child [but] does not hold true where the victim is an older adolescent, who is able to engage in sexual intercourse voluntarily, despite being legally incapable of consent." *Estrada-Espinoza*, 546 F.3d at 1154 (alterations in original) (internal quotation marks omitted). We also observed that "[t]he fact that the vast majority of states do not forbid consensual sexual intercourse with a 17-year-old male or female indicates that such conduct is not necessarily abusive." *Id.* at 1153.

[5] The distinction between offenses punishing sexual conduct with older adolescents and offenses punishing the same conduct with younger children explains why we and our sister circuits have consistently held that sexual offenses against younger children constitute "crimes of violence." *See, e.g.*, *Dos Santos v. Gonzales*, 440 F.3d 81, 84-85 (2d Cir. 2006) (holding that a conviction under a Connecticut statute criminalizing "contact with the intimate parts . . . of a child under the age of sixteen years" is a "crime of violence"); *United States v. Ortiz-Delgado*, 451 F.3d 752, 757 (11th Cir. 2006) (holding that a conviction under California Penal Code section 288(a) is a "crime of violence"); *Medina-Maella*, 351 F.3d at 947; *Pereira-Salmeron*, 337 F.3d at 1155; *Rayo-*

*Valdez*, 302 F.3d at 316 (holding that a conviction under a Texas statute criminalizing the aggravated sexual assault of child under fourteen is a "crime of violence"); *Ramsey v. INS*, 55 F.3d 580, 583 (11th Cir. 1995) (per curiam) (holding that a conviction under a Florida statute criminalizing attempted lewd assault on a child under sixteen is a "crime of violence"); *United States v. Reyes-Castro*, 13 F.3d 377, 379 (10th Cir. 1993) (holding that a conviction under a Utah statute criminalizing the indecent touching of a child under fourteen is a "crime of violence").

**[6]** Applying these distinctions in *Estrada-Espinoza*, we held that because the California statutory rape provisions punished conduct not only with younger children but also with older adolescents, and did not require an age difference of four years—one of the elements of § 2243, convictions under these statutes "do not categorically constitute 'sexual abuse of a minor.' " 546 F.3dat 1160. Contrary to Medina's argument, given that our holding was intended to define statutory rape laws only, *Estrada-Espinoza* in no way undermines our prior conclusion that "[t]he use of young children for the gratification of sexual desires constitutes abuse," *Baron-Medina*, 187 F.3d at 1147; *see also Medina-Maella*, 351 F.3d at 947, but instead reaffirms it. Medina maintains that by using the federal statutory definition for "sexual abuse of a minor," *Estrada-Espinoza* abrogates our explicit rejection of the federal definition in *Baron-Medina* and overrules *Medina-Maella.* Because § 2243 was intended by *Estrada-Espinoza* to define only statutory rape crimes, however, it does not undermine the conclusion of *Baron-Medina* that § 2243 does not define "sexual abuse of a minor" as applicable to younger children. In fact, rather than overruling *Baron-Medina*, we affirmatively relied upon it in *Estrada-Espinoza. See* 546 F.3d at 1152-53. Moreover, if we were to define "sexual abuse of a minor" in U.S.S.G. § 2L1.2 as limited to § 2243, we would eliminate the need for the separate and independent example of "statutory rape" as a "crime of violence." When interpreting the Guidelines, we must give meaning to all its words and

render none superfluous. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). We therefore reject the proposition that § 2243 defines the universe of sexual offenses contemplated by U.S.S.G. § 2L1.2's term "sexual abuse of a minor."

**[7]** Finally, a literal reading of *Estrada-Espinoza*, taken to its logical conclusion, would lead to an absurd result. As noted above, one of the elements of the generic offense that we extrapolated from § 2243 is that the minor be between the ages of twelve and sixteen. *Estrada-Espinoza*, 546 F.3d at 1158. If the generic elements articulated in *Estrada-Espinoza* comprise all the conduct constituting "sexual abuse of a minor," then no child under the age of twelve would be contemplated by the term "minor," and sexual crimes against children under twelve would not be "crimes of violence" subjecting the offenders to a sixteen-level increase. Because we do not believe that our en banc panel intended such a bizarre result, but was expressly considering statutory rape statutes only, we do not read *Estrada-Espinoza* to hold that § 2243 provides the only relevant definition of the term "sexual abuse of a minor" found in U.S.S.G. § 2L1.2. Thus, *Medina-Maella*'s and *Baron-Medina*'s holdings that a violation of California Penal Code section 288(a) constitutes "sexual abuse of a minor" and warrants a sixteen-level increase under U.S.S.G. § 2L1.2 as a "crime of violence" remain valid law subsequent to *Estrada-Espinoza*. The district court did not err in increasing Medina's offense level by sixteen, thereby enhancing Medina's sentence.

## B.   Deportation of Material Witnesses

The district court did not err in denying Medina's motion to dismiss the indictment for failure to obtain Medina's waiver of the right to retain material witnesses. Medina contends that the government failed to obtain from him a valid "knowing and intelligent waiver of the right to retain a deportable alien witness," as required by *United States v. Lujan-Castro*, 602 F.2d 877, 878 (9th Cir. 1979) (per curiam). After

an evidentiary hearing and a review of the videotapes of the witness statements, the district court found that the two witnesses did not provide exculpatory evidence that would corroborate Medina's claim of duress. The district court also found that the government acted in good faith by videotaping the interviews with the witnesses. Concluding that "there is no bad faith and that [Medina was] not prejudiced," the court held that "a *Lujan-Castro* waiver was not required" and denied the motion to dismiss the indictment.

**[8]** The right to retain a deportable alien witness is based upon the Fifth Amendment guarantee of "due process of law," U.S. Const. amend. V, and the Sixth Amendment guarantee of "compulsory process for obtaining witnesses in [one's] favor," U.S. Const. amend. VI. *See United States v. Mendez-Rodriguez*, 450 F.2d 1, 4 (9th Cir. 1971). We have previously held that this right may be subject to a "knowing and intelligent waiver." *Lujan-Castro*, 602 F.2d at 878. The Supreme Court has since narrowly construed the right, however, holding that a constitutional violation may be found "only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982). The Court implicitly overruled *Mendez-Rodriguez*'s lower threshold that a constitutional violation occurs when the government deports an alien whose "testimony could conceivably benefit the defendant." *Id.* at 862 (internal quotation marks omitted).[3] "[P]rompt deportation of alien witnesses who are determined by the Government to possess no material evidence relevant to a criminal trial," the Court reasoned, "satisf[ies] immigration policy," and mitigates the "substantial financial and physical burdens upon the Government, not to mention the human

---

[3]The abrogation of *Mendez-Rodriguez* by *Valenzuela-Bernal* is recognized in *United States v. Marquez-Amaya*, 686 F.2d 747, 747-48 (9th Cir. 1982) (per curiam).

cost to potential witnesses who are incarcerated though charged with no crime." *Id.* at 865.

**[9]** Thus, the right to retain deportable witnesses is limited to the right to retain witnesses who are material and favorable to the defense. If the government "conclude[s] that [the witnesses] possess[ ] no evidence relevant to the prosecution or the defense," *id.* at 866, it does not need to seek a *Lujan-Castro* waiver, and it may deport the witnesses before granting the defendant the opportunity to interview them.[4] Thus, before reaching the question of whether Medina waived his right under *Lujan-Castro*, we must examine whether the witnesses deported by the government in this case would have provided testimony that was material and favorable to the defense.[5]

---

[4]We do not decide the scope of the government's obligation to request a waiver from a defendant before deportation if it determines that the witnesses are material and favorable to the defense. *Valenzuela-Bernal* explicitly cited case law concerning the "constitutionally guaranteed [right of] access to evidence," and reinforced that " 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " 458 U.S. at 867-68 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). It appears that the government cannot evade its constitutional obligations by asking the defendant for a *Lujan-Castro* waiver in such circumstances, just as the government cannot evade its responsibility to disclose exculpatory evidence by asking the defendant to waive his right to a fair trial, *Brady*, 373 U.S. at 87, but we leave the resolution of that question for another day.

[5]The threshold inquiry regarding the material and favorable nature of deported witnesses' proposed testimony is similar to the threshold requirement of being in custody for the purposes of *Miranda* warnings. As discussed below, we do not reach the question of whether a defendant properly waived his *Miranda* rights unless we determine that a defendant was in custody, and therefore had a right to be given the *Miranda* warnings. Similarly, we do not reach the question of whether a defendant properly waived his rights under *Lujan-Castro* unless we first determine that the defendant had a right to retain the particular witnesses in question.

*United States v. Ramirez-Jimenez*, 967 F.2d 1321 (9th Cir. 1992), does not mandate a different process. In that case, we first determined that no

**[10]** *Valenzuela-Bernal* sets forth a two-pronged test for determining whether the government unconstitutionally deported witnesses. "[T]he defendant must make an initial showing that the Government acted in bad faith *and* that this conduct resulted in prejudice to the defendant's case." *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991). "To establish that the government acted in bad faith, [the defendant] must show either 'that the Government departed from normal deportation procedures' or 'that the Government deported [the witness] to gain an unfair tactical advantage over him at trial.' " *Pena-Gutierrez*, 222 F.3d at 1085 (quoting *Dring*, 930 F.2d at 695). Here, the government did neither. As explained below, border patrol agents questioned the two witnesses, determined they had no information that supported Medina's account of duress, and deported them. There is no indication that the government's actions deviated from regular procedure or that it gained some tactical advantage from the deportation of these witnesses. Thus, Medina failed to demonstrate that the witnesses were deported in bad faith.

To demonstrate prejudice, the defendant must "make[ ] a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Valenzuela-Bernal*, 458 U.S. at 873; *Dring*, 930 F.2d at 693-94. The Supreme Court recognized the difficulty for "a defendant who has not had an opportunity to interview a witness . . . in making a showing of materiality," and suggested the defendant may draw on "the events to which a witness might testify, and the relevance of those events to the crime charged." *Valenzuela-Bernal*, 458 U.S. at 871.

---

constitutional violation existed under *Valenzuela-Bernal*, and then affirmed the district court's finding of a knowing and intelligent *Lujan-Castro* waiver. *Id.* at 1325. This particular iteration of a two-step process was dictum, however. The fact that the government asked for, and successfully obtained, a *Lujan-Castro* waiver in *Ramirez-Jimenez* does not create an obligation for the government to do so in analogous cases.

**[11]** Though Medina has never had the opportunity to question the witnesses, his task is less burdensome than that contemplated in *Valenzuela-Bernal* because he had access to the transcripts and the videotapes of the government's interviews of the two witnesses. According to those transcripts, one witness stated that Medina[6] was in the smuggler's house when he arrived, noted that Medina was "chatting," and answered affirmatively when asked whether Medina was in a good mood. The witness's statements also suggested that the smuggler that led them to the fence did not actually jump the fence but told him "to follow the one that was in front," referring to Medina. The witness further stated that Medina was "the one that in the end had the ladder." The other witness told the Border Patrol that it was Medina who "said to jump," and answered affirmatively when asked whether Medina was leading during their crossing. That witness also testified that Medina "was talking . . . with other men that were [smugglers]." When asked whether Medina was in good spirits or looked sick, he answered that Medina "looked normal." These witness statements not only fail to support Medina's account of duress during his entry into the United States, they actually contradict it. Thus, while the witnesses' testimony at trial perhaps would have been material, it was clearly not favorable to Medina.

**[12]** Therefore, because Medina failed to show bad faith on the part of the government and failed to demonstrate that the deported witnesses' proposed testimony would be material and favorable to the defense, Medina's rights were not violated by the deportation of the two witnesses. Because Medina did not have a right to retain the witnesses, the government was not under an obligation to obtain a *Lujan-Castro* waiver from him before deporting the witnesses.[7]

---

[6]Neither witness identified Medina by name. Rather, they referenced him by his clothing and, at the end of the interview, each identified Medina in a photographic lineup.

[7]Because no *Lujan-Castro* waiver was required in this case, we need not consider Medina's argument that the district court failed to make factual findings on the record with respect to his state of mind.

## C.  Suppression of Field Statements under *Miranda*

The district court did not err in denying Medina's motion to suppress the field statements. Medina argues that his field statements were taken in violation of *Miranda*. The district court held an evidentiary hearing on this question. It found that "the detention was very temporary," that "[t]he agent conducted a proper field investigation regarding citizenship," that "this interrogation was proper," and that, because "[t]he defendant was not in custody, . . . there's no violation." The parties dispute only the custody prong of *Miranda*.

We have held that the question "[w]hether a person is in 'custody or otherwise deprived of his freedom of action in any significant way,' *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), is answered by reviewing the totality of facts involved at the time of the alleged restraint." *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981). "Pertinent areas of inquiry include the language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the inter- rogation, the duration of the detention and the degree of pres- sure applied to detain the individual." *Id.* The subject of the inquiry is "whether a reasonable innocent person in such cir- cumstances would conclude that after brief questioning he or she would not be free to leave." *Id.*

The Supreme Court applied this reasoning to traffic stops in *Berkemer v. McCarty*, holding that due to the "noncoercive aspect of ordinary traffic stops[,] . . . persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." 468 U.S. 420, 440 (1984). *Berkemer* highlighted the "presumptively temporary and brief" nature of the stop, *id.* at 437, and the "exposure to public view [that] both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse," *id.* at 438. Further, in the con-

text of apprehension of individuals potentially illegally present in the United States, the Court has clarified that "when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion . . . [and] question the driver and passengers about their citizenship and immigration status." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975).

We expanded these principles in *Galindo-Gallegos* to abbreviated stops and questioning at the border. There, two border patrol officers apprehended a group of fifteen to twenty individuals running from the border in an isolated location, told them to sit on the ground, and asked them questions regarding their citizenship and immigration status. 244 F.3d at 729. We held that "this is ordinarily a *Terry*[8] stop, not custodial questioning." *Id.* at 732 (footnote added). The detention analyzed in *Galindo-Gallegos* was not particularly "public," and the individuals questioned were not actually "free to leave"—in Galindo-Gallegos's case, for example, "he tried to run away, and was caught and brought back." *Id.* at 730. However, "[w]e have approved of *Terry* stops that include handcuffing the suspect during questioning, ordering a suspect to lie prone on the ground, or placing the suspect in a police vehicle." *Id.* at 735 (Paez, J., concurring) (citations omitted). We therefore affirmed the district court's denial of the motion to suppress the individuals' answers to the officers' questions. *Id.* at 732 (majority opinion).

[13] Thus, *Galindo-Gallegos* dictates the result in this case: when border patrol agents stop a car based on reasonable suspicion that individuals are illegally present in the country and question the occupants regarding their citizenship and immigration status, the occupants are not in custody for *Miranda* purposes. Even though the border patrol agent prevented

---

[8]*Terry v. Ohio*, 392 U.S. 1 (1968).

Medina from leaving the parking lot by blocking his car, approaching it with his gun drawn, and interrogating him about his citizenship and immigration status, the agent did not venture beyond the restraints of *Brignoni-Ponce*, *Terry*, or *Berkemer*. Therefore, Medina was not in custody and was not entitled to *Miranda* warnings.

## D. Constitutionality of Sentence Under 8 U.S.C. § 1326

**[14]** Noting that he raises the argument only to preserve it for en banc and Supreme Court review, Medina argues that a judicial finding of a prior conviction, enhancing the statutory maximum under 8 U.S.C. § 1326, violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Medina's argument is foreclosed by *Almendarez-Torres v. United States*, which held that a judge may find the fact of a prior conviction. 523 U.S. 224, 239-47 (1998). *Almendarez-Torres* remains good law. *See United States v. Becerril-Lopez*, 541 F.3d 881, 893 (9th Cir.) (holding that *Almendarez-Torres* remains "binding authority"), *cert. denied*, 129 S. Ct. 959 (2008); *United States v. Beng-Salazar*, 452 F.3d 1088, 1091, 1097 (9th Cir. 2006) (rejecting the defendant's arguments challenging the "continued validity of *Almendarez-Torres*").

## IV. CONCLUSION

Because *Estrada-Espinoza* did not expressly or implicitly overrule our prior precedent holding that a conviction under California Penal Code section 288(a) constitutes "sexual abuse of a minor" and is therefore a "crime of violence," the district court correctly calculated Medina's sentence under U.S.S.G. § 2L1.2. The district court properly denied Medina's motion to dismiss the indictment for failure to inform Medina of his right to retain witnesses because Medina did not have a right to retain the two witnesses, whose proposed testimony was not favorable to Medina. The district court also correctly denied Medina's motion to suppress his field statements for failure to give *Miranda* warnings because, given the nature

and circumstances of the border patrol's inquiry, Medina was not in custody and therefore was not entitled to *Miranda* warnings. Finally, pursuant to *Almendarez-Torres*, Medina's § 1326 conviction and sentence did not violate *Apprendi*.

**AFFIRMED.**