**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT MORRIS FENENBOCK,
          *Petitioner-Appellant,*

          v.

DIRECTOR OF CORRECTIONS FOR
CALIFORNIA,

          *Respondent-Appellee.*

No. 11-15880

D.C. No.
2:97-cv-01731-
LKK-CHS

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
April 16, 2012—San Francisco, California

Filed May 24, 2012
Amended August 30, 2012

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

10255

## COUNSEL

Jolie Lipsig, Sacramento, California, for the petitioner-appellant.

Glenn R. Pruden, Supervising Deputy Attorney General, San Francisco, California, for the respondent-appellee.

## ORDER

The opinion filed on May 24, 2012, slip opinion page 5701, is amended as follows:

On slip opinion page 5718, replace footnote 12 with the following:

> In briefing and at oral argument, the parties agreed that the last reasoned state court opinion addressed the constitutional question. In our view, that opinion

resolved Petitioner's claim on only state evidentiary grounds. *See Williams v. Cavazos*, 646 F.3d 626, 636-37 (9th Cir. 2011), *cert. granted*, 132 S. Ct. 1088 (2012). But it is possible that the state supreme court later implicitly ruled on the constitutional claim, albeit without explanation, when it decided Petitioner's habeas claims. *See Richter*, 131 S. Ct. at 784; *see also Williams*, 646 F.3d at 636.

Regardless, we need not resolve the question because Petitioner's claims would fail even if we were to review de novo. "A showing of constitutional error under the Sixth Amendment only merits grant of the petition for habeas corpus if the error was not harmless, that is, if it had a 'substantial and injurious effect or influence in determining the jury's verdict.' " *Holley*, 568 F.3d at 1100 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). Here, as the trial judge noted, Petitioner had sufficient alternative avenues for casting doubt on R.H.'s reliability. Further, significant additional evidence linked Petitioner to the murder, such that the exclusion of one potentially false accusation by R.H. was harmless.

With this amendment, the panel has voted to deny the petition for panel rehearing. Judges O'Scannlain and Graber have voted to deny the petition for rehearing en banc, and Judge Schroeder has so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

The petition for panel rehearing and petition for rehearing en banc are DENIED. No further petitions for panel rehearing or for rehearing en banc will be entertained.

**OPINION**

GRABER, Circuit Judge:

Petitioner Robert Morris Fenenbock appeals the district court's denial of his petition for habeas corpus, brought under 28 U.S.C. § 2254. His grounds for appeal all pertain to the prosecution's primary witness, a minor named R.H. Petitioner argues that the trial court violated his rights when it denied him pretrial access to R.H. and then limited cross-examination of R.H. during the trial. We hold that (1) Petitioner had no absolute right to pretrial access to R.H, (2) no prosecutorial interference arose when an unrelated government agency acted in R.H.'s best interests, and (3) the trial court's limitations on the length and content of cross-examination were permissible.[1] Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

During the autumn of 1991 in Hawkins Bar, California, Petitioner was involved in a series of events leading to the death of Gary "Hop" Summar.[2] Petitioner and seven other individuals were charged with various crimes related to Summar's death. A jury convicted Petitioner of first-degree murder, for which he received a prison term of 25 years to life, plus one year for use of a deadly weapon.

---

[1]There being no error, we need not reach the claim of cumulative error. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.").

[2]A full recitation of the facts is found in *People v. Fenenbock*, 54 Cal. Rptr. 2d 608, 610-16 (Ct. App. 1996). The federal district court adopted the state court's factual summary, verbatim. In adopting the factual summary, the district court noted that the facts had not been rebutted with clear and convincing evidence and were therefore presumed correct under 28 U.S.C. § 2254(e)(1) and *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner does not challenge any of the factual findings on appeal, so we likewise presume them to be correct.

Leading up to the trials, R.H. emerged as a witness. The day after the murder, Child Protective Services ("CPS") took R.H. and his siblings into state custody because of neglect and potential abuse. Soon thereafter, with the acquiescence of CPS personnel, law enforcement authorities interviewed R.H., and it became clear that he had witnessed Summar's murder.

During the trial, the prosecution called R.H. as a witness. Petitioner's lawyers sought to speak informally with R.H. before cross-examination. Essentially, defense counsel were concerned that the prosecution had obtained substantial pre-trial access to R.H. and that his therapists and the prosecution had been coaching him. Richard Bay, R.H.'s court-appointed lawyer, refused the request to speak with R.H., voicing concern that if he granted pretrial access to counsel for one defendant, he would have to grant access to counsel for each of the other seven defendants as well. Relying on the advice of R.H.'s therapists and guardian ad litem, Bay argued that R.H.'s interests would not be well served by making him relive the traumatic event over and over again.

The trial judge held a hearing to address concerns about the prosecution's substantial and unilateral pretrial access, as well as allegations of witness coaching. For example, social workers had prepared R.H. for his testimony by telling him that the defense lawyers were "crabby" and that "the most important thing" was to make sure that the defendants stayed in jail. During that hearing, other troubling facts about R.H.'s preparation emerged. At one point, a therapist described the prosecution as representing R.H.'s interests and stated that defense counsel would try to "trick" him. The most egregious coaching, including the specific events detailed in this paragraph, was conducted by private therapists who did not work for the government.

Following the hearing, the trial judge determined that "ample evidence" supported Bay's decision to refuse pretrial access to R.H.; accordingly, the trial judge allowed direct and

cross-examination to continue. Later, he held further hearings and expressly found that the prosecution had played no part in Bay's decision.

In cross-examining R.H., the defense lawyers attacked his reliability as a witness. As the district court noted in the decision under review, "during his entire cross-examination, R.H. frequently answered 'I don't remember,' 'I don't know,' or 'All I remember is . . . .' " For instance, at one point, R.H. said: "All I remember is . . . dropping off either [Petitioner] or [one of Petitioner's co-defendants]. I think we dropped him off." R.H. admitted having initially lied to the police about (1) whether he had seen anyone stab Summar and (2) whether he previously had been to the location where Summar was killed. Cross-examination also revealed that R.H. had initially told his therapists that he had not witnessed any part of the murder.

During cross-examination, the trial judge noted that R.H. was showing signs of fatigue, after having sat for about one-and-a-half hours of direct examination and about two-and-a-half hours of cross-examination, with a break during cross-examination. Petitioner's counsel stated that he wanted "a couple of days" of cross-examination, but the trial judge limited him to an additional half day. Defense counsel then completed his cross-examination with at least four hours to spare.

The trial judge also limited cross-examination of R.H. with respect to his allegedly false report, made closer in time to the trial than to the murder, that his foster father had threatened his foster mother with a firearm. The judge determined that the topic was collateral and that it would take too long to litigate the truth of the report, requiring testimony from social workers, R.H., and R.H.'s foster parents. The trial judge noted that this topic not only would be too time-consuming but also

would not be especially probative given the several other inconsistencies in R.H.'s testimony.[3]

Petitioner appealed his conviction and lost, in what would be the last reasoned opinion in his case. *People v. Fenenbock*, 54 Cal. Rptr. 2d 608 (Ct. App. 1996).[4] The Supreme Court of California summarily denied his petition for review. *People v. Fenenbock*, No. S055264, 1996 Cal. LEXIS 5688 (Cal. Oct. 2, 1996). Petitioner then filed a habeas petition in federal court, but the court stayed that petition and held it in abeyance pending exhaustion of his state claims. Petitioner filed a state habeas petition that included the arguments presented in this appeal; the Supreme Court of California summarily denied that petition as well. *In re Fenenbock*, No. S102760, 2003 Cal. LEXIS 4251 (Cal. June 25, 2003). Soon thereafter, the district court lifted the stay on the federal habeas petition, which proceeded in due course until the district court denied it and issued a certificate of appealability on the claims in this appeal. Petitioner timely appeals.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 2253. We review de novo a district court's denial of habeas corpus relief. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

---

[3]The specific ground for exclusion was California Evidence Code section 352, which states:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

[4]The discussion of the claims in this case is not contained in the published decision; the California appellate court resolved those claims in an unpublished decision.

Our review of the underlying state court decisions, on the other hand, is more limited. Because Petitioner filed his § 2254 habeas petition after April 24, 1996, his petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214. *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004). Under AEDPA, we must defer to a state court's decision with respect to any claim that was adjudicated on the merits unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [A] state has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits.

*Lambert*, 393 F.3d at 969.

Under § 2254(d)(1), a decision involves an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (internal quotation marks omitted).

## DISCUSSION

### A. *Pretrial Access*

**[1]** The scope of Petitioner's right to interview R.H. before trial[5] was as follows:

---

[5]Petitioner cites no Supreme Court precedent explicitly recognizing the right to have access to adverse witnesses before trial, but we assume, without deciding, that such a right is necessarily implied by the right to a "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation marks omitted); *see id.* ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (internal quotation marks omitted)); *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (discussing when deportation of a witness might rise to the level of a due process violation); *Dennis v. United States*, 384 U.S. 855, 873 (1966) (stating, with respect to grand jury testimony, that "[i]n our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact," and that "[e]xceptions to this are justifiable only by the clearest and most compelling considerations"). We assess this "right of access" under principles of the Due Process Clause. *See Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) (stating that "elemental fairness and due process require[ ]" that both parties have an equal opportunity to interview witnesses).

To the extent that Petitioner seeks to invoke the Confrontation Clause, his claim fails under the AEDPA standard of review because no *clearly established* Supreme Court precedent supports that argument, which remains subject to dispute. At least one Supreme Court opinion failed to obtain majority support for the proposition that the Confrontation Clause is a "*trial* right" and not "a constitutionally compelled rule of pretrial discovery." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality opinion); *accord Coleman v. Calderon*, 150 F.3d 1105, 1112 (9th Cir.), *reversed on other grounds*, 525 U.S. 141, 145 (1998) (per curiam). *But see Kentucky v. Stincer*, 482 U.S. 730, 738 n.9 (1987) ("The personal view of the author [Blackmun, J.] of this opinion as to the Confrontation Clause is somewhat broader than that of the *Ritchie* plurality."); *United States v. Collins*, 551 F.3d 914, 925-26 (9th Cir. 2009) (expressing doubt as to *Ritchie*'s scope).

> [A] defendant's right of access to a witness exists co-equally with the witness['s] right to refuse to say anything. The defendant's right of access is not violated when a witness chooses voluntarily not to be interviewed. . . . [T]he prosecution may not interfere with a witness's free choice to speak with the defense . . . .

*United States v. Black*, 767 F.2d 1334, 1338 (9th Cir. 1985) (internal quotation marks and citations omitted); *accord Cacoperdo v. Demosthenes*, 37 F.3d 504, 509 (9th Cir. 1994) ("[The witness] had a right not to be interviewed if she so chose."). Thus, a witness' right to refuse pretrial access is well established,[6] but it is equally well established that the prosecution may not interfere with a witness' decision to grant or refuse pretrial access.[7]

Here, Petitioner's lack of access to R.H. arose from that witness' own decision (through his guardian ad litem, his

---

[6]"Ninth Circuit caselaw . . . may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.' " *Duhaime v. DuCharme*, 200 F.3d 597, 600 (9th Cir. 2000).

[7]*See, e.g.*, *Callahan v. United States*, 371 F.2d 658, 660 (9th Cir. 1967) (involving allegations that the United States Attorney's office or the office of the United States Marshal had "advised the witnesses not to talk to defense counsel"); *United States v. Gonzales*, 164 F.3d 1285, 1288 (10th Cir. 1999) (involving an Assistant United States Attorney who "instructed [the witness] to call the defense attorney . . . and tell him she did not want to talk to defense representatives" and also "threatened defense team members with prosecution if they continued to 'harass' government witnesses"); *United States v. Long*, 449 F.2d 288, 295-96 (8th Cir. 1971) (declining to find error where a witness did not want to talk to defense counsel, and there was "no evidence that his reluctance to talk to the defendants' attorneys resulted from any interference by the Government or its attorneys"); *Gregory*, 369 F.2d at 187 (involving a prosecutor who "advis[ed] the witnesses . . . not to speak to anyone unless he were present").

appointed counsel, and his social workers) to refuse to be interviewed by defense counsel. As the district court stated, "[t]his is no different from a concerned parent refusing to allow a child to be interviewed by defense counsel."[8]

[2] It is significant, then, that Petitioner can point to no prosecutorial interference with access to R.H. Instead, Petitioner alleges indirect interference, by means of another arm of government—CPS, which employed one of the social workers who worked with R.H. But that argument ignores the trial court's express finding that the prosecution did not interfere, even indirectly, with R.H.'s decision. In a habeas case such as this one, we must defer to that finding unless Petitioner overcomes it with clear and convincing evidence to the contrary, or at least demonstrates that the finding was an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

[3] Accordingly, Petitioner's denial of access claim fails for two reasons. First, the record supports the finding that an interview with defense counsel would have run counter to R.H.'s best interests. Second, the decisions that Petitioner faults were made by CPS, not the prosecution. Petitioner cannot demonstrate *prosecutorial* interference by pointing to the independent conduct of a state social services agency that was acting *in loco parentis*. Although in some contexts the prosecutor may be responsible for what happens in a different government office, *see United States v. Blanco*, 392 F.3d 382, 394 (9th Cir. 2004) (holding that the government's obligation

---

[8]Citing *People v. Pitts*, 273 Cal. Rptr. 757, 872-73 (Ct. App. 1990), Petitioner also argues that *California* law gives courts discretion to reject a guardian's decisions in a criminal case if those decisions would deprive a defendant of constitutional rights. Even assuming that Petitioner is correct, and further assuming that, as Petitioner argues, the trial judge misapprehended his role in this regard, Petitioner still cannot demonstrate that such a mistake would be "contrary to, or involved an unreasonable application of, clearly established *Federal* law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), applies "not only [to] the prosecutor, but [to] the government as a whole"), here we must respect the separate authority of a state agency charged with protecting the interests of children, *see Maryland v. Craig*, 497 U.S. 836, 853 (1990) ("[A] State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court."). If a state's interest in protecting the interests of children can, in some circumstances, permit trial testimony by one-way closed-circuit television, *id.*, then those interests also can support the denial of pretrial access to a witness who has an indisputable right to refuse such access. *See United States v. Rouse*, 111 F.3d 561, 566 (8th Cir. 1997) ("When a child witness is in the legal custody of a social services agency, that agency as custodian may refuse requests for pretrial interviews.").[9]

**[4]** Petitioner did not raise the denial-of-access claim until he filed his state habeas petition, so the last reasoned opinion,

---

[9]Petitioner cites cases holding that a due process violation arises when the government deports a potentially favorable witness, thereby denying access to that witness. *See, e.g.*, *United States v. Mendez-Rodriguez*, 450 F.2d 1, 4 (9th Cir. 1971), *overruled by United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982), *as stated in United States v. Medina-Villa*, 567 F.3d 507, 516 (9th Cir. 2009). But intervening Supreme Court rulings have significantly narrowed that rule to require a showing "that the Government acted in bad faith *and* that this conduct resulted in prejudice to the defendant's case." *Medina-Villa*, 567 F.3d at 517 (internal quotation marks omitted). Bad faith is relevant to the inquiry in such cases because the denial of access relates to *potentially* exculpatory evidence, rather than evidence *known* to be exculpatory. *United States v. Dring*, 930 F.2d 687, 693 n.7 (9th Cir. 1991). This case, similarly, involves denial of access to *potentially* exculpatory evidence—the possibility that R.H. would have told a different version of his story. Thus, even if we were to apply the reasoning of the deportation cases, Petitioner could not prevail without showing prosecutorial bad faith, which he has failed to do. *See Medina-Villa*, 567 F.3d at 517.

which the California appellate court issued in his direct appeal, contains no discussion of the matter. *See Robinson*, 360 F.3d at 1055 (noting that we review the "last reasoned decision" of a state court addressing the issue at hand). The state supreme court denied the state habeas petition without explanation. We must therefore "independently review the record, [but] we still defer to the state court's ultimate decision." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *see also Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). That is, although we must decide independently whether the state court could have reached its conclusion without applying clearly established federal law improperly, AEDPA still operates to limit the governing law to Supreme Court precedents. Petitioner has failed to identify any such precedent to support the contention that he suffered a violation of his right to pretrial access to R.H., and we have discovered none. Accordingly, we find no error.

### B.   *Time Limit on Cross-Examination*

**[5]** Petitioner argues that the time limit on his cross-examination of R.H. amounted to a violation of the Confrontation Clause of the Sixth Amendment. The "main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal quotation marks omitted). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested[, allowing the cross-examiner] . . . to delve into the witness' story to test the witness' perceptions and memory . . . [and] to impeach, i.e., discredit, the witness." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

**[6]** But the Supreme Court has repeatedly emphasized that the right is limited to the guarantee of "an *opportunity* for

effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679 (internal quotation marks omitted). Accordingly, "trial judges retain *wide latitude* insofar as the Confrontation Clause is concerned to impose *reasonable limits* on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (emphases added).

**[7]** Generally speaking, a court violates the Confrontation Clause only when it prevents a defendant from examining a particular and relevant topic, such as bias:

> The Supreme Court consistently has held that a Confrontation Clause violation occurs when a trial judge prohibits *any* inquiry into why a witness may be biased. However, when some inquiry is permitted, trial judges retain wide latitude to impose reasonable limits on such cross-examination. No Confrontation Clause violation occurs as long as the jury receives sufficient information to appraise the biases and motivations of the witness.

*Hayes v. Ayers*, 632 F.3d 500, 518 (9th Cir. 2011) (internal quotation marks, citations, and ellipsis omitted); *see also Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (per curiam). For example, in *Van Arsdall*, the Court found a Confrontation Clause violation because the court had "cut[ ] off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony." 475 U.S. at 679. Similarly, in *Davis*, an error arose when the trial court granted a protective order prohibiting the defense from introducing a witness' juvenile adjudication, not even for the purpose of demonstrating that the witness "might have

been subject to undue pressure from the police" or "under fear of possible probation revocation." 415 U.S. at 311.

**[8]** Indeed, a limitation on cross-examination that excludes testimony on a particular topic might violate the rule that "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (internal quotation marks omitted); *see also Holley v. Yarborough*, 568 F.3d 1091, 1099 (9th Cir. 2009). For that reason, limiting the time allotted to cross-examination is often considered a better approach than limiting the subject matter. *See Holley*, 568 F.3d at 1100 ("[T]he court could have limited the time allotted to discussion of the [objectionable topic], rather than excluding all discussion.").

**[9]** Here, the trial court adopted that preferred approach by limiting the time allotted for cross-examination. Petitioner presents no cogent explanation as to why the time used by his defense counsel at trial (about three hours) plus the unused four hours offered by the trial court would not have sufficed to explore the intended material exhaustively. All he can point to is defense counsel's unexplained assertion to the trial court that he needed two days to cover four hundred pages of discovery. In this circumstance, the limit was reasonable and did not run afoul of any of the Supreme Court's Confrontation Clause precedents.[10]

---

[10]Our conclusion is unaffected by the trial judge's apparent motivation for imposing a time limit—R.H.'s discomfort or anxiety. *Davis* is not to the contrary. That decision held that, when a juvenile witness might suffer "temporary embarrassment" because of inquiry into a particular *topic* of cross-examination, that embarrassment can be "outweighed by [a defendant]'s right to probe" that topic. 415 U.S. at 319. *Davis* simply reiterates the rule that restrictions on the *content* of cross-examination are subject to more searching review; it says nothing about restrictions on the *duration* of cross-examination.

Petitioner's argument would fail even under de novo review. It therefore also fails under the more stringent AEDPA standard of review that applies here, where the state appeals court properly identified and applied the relevant rules in adjudicating this claim on the merits. *See Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (en banc) (holding that a court may "decide the § 2254(d)(1) issue . . . by deciding the constitutional issue de novo first").

## C.  *Limit on Collateral Impeachment*

**[10]**  The trial judge did preclude cross-examination of one particular topic—R.H.'s out-of-court allegations about his foster father's threat to his foster mother and about the truth of that accusation. The trial judge reasoned that injecting the topic would confuse the issues and consume undue time. In addition, the judge observed that, even if R.H. were impeached, the benefit to Petitioner would be only marginal because of other significant areas of impeachment.

**[11]**  The trial judge acted within his discretion, citing concerns repeatedly recognized as valid by the Supreme Court. *See Van Arsdall*, 475 U.S. at 679 (recognizing concerns such as "confusion of the issues . . . or interrogation that is repetitive or only marginally relevant"). Petitioner cites no Supreme Court opinion recognizing a right to impeachment via extrinsic evidence relating to the truth of a collateral out-of-court statement.[11] "When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably

---

[11]The relevant Supreme Court cases are more concerned with a witness' motive to lie. For example, *Olden* involved an attempt to cross-examine a witness as to whether or not she was involved in a relationship with and living with a man, after she had testified during direct examination that she was living with her mother; the fact of her cohabitation was relevant in that it suggested a motive to lie. 488 U.S. at 230. In *Van Arsdall*, the excluded topic of cross-examination concerned whether the prosecution had agreed to drop certain charges against a witness in exchange for his promise to discuss the murder in which the defendant was charged. 475 U.S. at 676. Similarly, *Davis* involved cross-examination relating to a witness' probationary status, intended to show that he might have testified due to undue pressure from police or fear of probation revocation. 415 U.S. at 311. None of these cases involved cross-examination about the truth or falsity of an out-of-court statement relating to a collateral matter.

applied the law as to that issue." *Holley*, 568 F.3d at 1098. Thus, under the usual AEDPA standard of review, this claim fails.[12]

AFFIRMED.

---

[12]In briefing and at oral argument, the parties agreed that the last reasoned state court opinion addressed the constitutional question. In our view, that opinion resolved Petitioner's claim on only state evidentiary grounds. *See Williams v. Cavazos*, 646 F.3d 626, 636-37 (9th Cir. 2011), *cert. granted*, 132 S. Ct. 1088 (2012). But it is possible that the state supreme court later implicitly ruled on the constitutional claim, albeit without explanation, when it decided Petitioner's habeas claims. *See Richter*, 131 S. Ct. at 784; *see also Williams*, 646 F.3d at 636.

Regardless, we need not resolve the question because Petitioner's claims would fail even if we were to review de novo. "A showing of constitutional error under the Sixth Amendment only merits grant of the petition for habeas corpus if the error was not harmless, that is, if it had a 'substantial and injurious effect or influence in determining the jury's verdict.' " *Holley*, 568 F.3d at 1100 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). Here, as the trial judge noted, Petitioner had sufficient alternative avenues for casting doubt on R.H.'s reliability. Further, significant additional evidence linked Petitioner to the murder, such that the exclusion of one potentially false accusation by R.H. was harmless.