74 A.3d 991

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DANIEL BLAZAS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 4, 2013—Decided August 26, 2013.

Before Judges GRAVES, ESPINOSA and GUADAGNO.

*Joseph E. Krakora, Public Defender,* attorney for appellant (*Stefan Van Jura, Assistant Deputy Public Defender,* of counsel and on the brief).

*Bruce J. Kaplan, Middlesex County Prosecutor,* attorney for respondent (*Joie D. Piderit, Assistant Prosecutor,* of counsel and on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

The "meaningful opportunity to present a complete defense" guaranteed by the Federal and New Jersey Constitutions is denied when the prosecution substantially interferes with a defendant's ability to secure witness testimony. In this case, the government conduct alleged did not result in the denial of witness testimony but, rather, in the denial of access to the witness for interview by the defense. Such allegations, if true, would be proof of substantial interference with defendant's constitutionally guaranteed right of access to witnesses. We therefore hold that the trial judge erred in failing to conduct an evidentiary hearing. In addition, after concluding that defendant had satisfactorily represented himself at a *Wade*[1] hearing, the trial judge granted his

---

[1] *United States v. Wade,* 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967).

motion to proceed pro se without adequately advising him of the consequences of his decision. Because we conclude that a reversal of defendant's convictions is required, we recite those facts necessary to give context to the issues.

Defendant was convicted of offenses arising from the robbery of a convenience store. At the time of the robbery on December 12, 2007, Prafulcha Patel was the only employee working at the store. A man entered the store, purchased a pack of Marlboro Red cigarettes with a $10 bill, and then demanded money from the cash register. After Patel refused, the man demanded money from the lottery register and showed a gun that was hidden in his hooded sweatshirt. The man took $1330 and left the store. Patel then called the police.

On the following day, Patel identified a photograph of defendant from a photographic array shown to him at the Sayreville Police Station. Patel also identified defendant at trial.

On December 14, 2007, defendant's ex-fiancée, Jennifer McHugh, gave a statement to the police regarding a telephone call she received from defendant on the night of the robbery. McHugh said defendant told her he had done a "caper" at the "Indian store." Later that day, defendant was arrested.

Defendant was indicted and charged with first-degree armed robbery, *N.J.S.A.* 2C:15–1 (count one); third-degree unlawful possession of a weapon (a handgun), *N.J.S.A.* 2C:39–5(b) (count two); second-degree possession of a weapon (a handgun) for unlawful purposes, *N.J.S.A.* 2C:39–4(a) (count three); fourth-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(4) (count four); and third-degree theft, *N.J.S.A.* 2C:20–3 (count five). In a separate indictment, defendant was charged with second-degree certain persons not to have weapons, *N.J.S.A.* 2C:39–7(b).

Defendant filed several pretrial motions, three of which are relevant to the appeal. The first two motions concern defendant's request to represent himself.

In September 2008, defendant sought to have new counsel assigned to represent him because he was dissatisfied with his attorney's motion practice. During the course of the argument, the judge stated,

> Obviously if you want to represent yourself and raise these things you can. I would certainly ask you to really think seriously about that, before doing it.... [I]t's a complex matter and you may look at things differently than most lawyers would, and then [sic] a judge would.

The judge asked defendant about his education and whether defendant would be able to understand the proceedings if he proceeded pro se. Defendant responded that he graduated from high school and attended two years of college. Defendant said,

> [I]t's not something that I want to do. But like ... I said I'm fighting for my life right here. There's a chance I'm never coming home from prison again. And with the animosity I feel towards this man, I can't be left in the room with [him].

The judge denied defendant's motion for new counsel, but advised him that if he wished to proceed pro se, he would need to file another motion and "go through a whole series of questions[.]" The judge also advised defendant that, even if he did proceed pro se, defense counsel would be ordered to be present at all proceedings to provide standby assistance. The court then reviewed the charges and concluded that defendant would face "20, 50, 60 years plus" if he was convicted at trial.

In January 2009, the court heard defendant's motion to proceed pro se. Defendant stated he was "ready to proceed pro se." The court questioned defendant about his "plan" and what he perceived he would have to do to get ready for trial:

> COURT: I guess my question to you, Mr. Blazas, [is] how are you going to prosecute this case without the help of outside counsel?
>
> DEFENDANT: Well, there's still co-counsel for advice, correct?
>
> COURT: Well, you can ask that he act as standby to help you with legal issues understanding he's not your law clerk.
>
> DEFENDANT: No, I understand.
>
> COURT: But when the time came to examine witnesses, if you wanted to examine them yourself, I suppose, you could do that because you're proceeding pro se. Do you think you're capable of proceeding pro se?
>
> DEFENDANT: I do.
>
> THE COURT: Tell me why.

Defendant explained that he knew the case better than anyone and had studied the process. The court asked defense counsel for his opinion about defendant's understanding of the *Wade* issue and whether he was capable and competent to represent himself in the *Wade* hearing. Defense counsel agreed that defendant was able to do so. The court then addressed defendant:

COURT: Let's take it a step at a time. You prosecute the *Wade* hearing. Fair enough?

DEFENDANT: Fair enough.

COURT: You do okay with that, you convince yourself as well as the Court that, in fact, you have mastery of the issues, we'll take it to the next step. All right?

DEFENDANT: Very well.

. . .

COURT: All right. I will permit you, sir. You seem to have a general understanding of what's going on. I cannot tell you that your perception of the law is accurate. But you're articulate in your presentation. You certainly understand the facts of the case and the allegations of the State better than anybody I would suspect. I accept Counsel's representation that he believes you understand what's going on and are capable of proceeding pro se. I do not believe it would be a wise decision, but it is not for me to decide. It's my decision whether or not you're competent and capable of doing it.

At the conclusion of the *Wade* hearing, after the court denied defendant's motion, defendant asked the court if it had made a determination as to whether he could continue to proceed pro se. This colloquy followed:

COURT: So far I think you're doing terrific.

DEFENDANT: Okay.

COURT: I'm not going to intervene. I think you're doing well. You asked good questions. You've got good issues. I think you understand, and correct me if I'm wrong, the reason for my ruling it's not that you agree with them but I'm trying to make it clear and you seem to understand and you react appropriately. So at this point in time I see no reason to interfere with you're continuing to represent yourself.

At defendant's request, the judge agreed to call the jail "and tell them that [defendant is] in fact proceeding pro se."

The third motion relevant to this appeal concerned defendant's allegations that the State substantially interfered with his ability to interview witnesses. At a status conference in May 2009, the court discussed with defendant and counsel defendant's motion to

dismiss the indictment based upon prosecutorial misconduct or, in the alternative, to bar McHugh from testifying against him. Defendant contended that the State had improperly interfered with his right to prepare a defense and supported his argument with two reports prepared by a defense investigator, Justin Kurland.

Kurland stated that, after he placed a telephone call to McHugh on April 2, 2009, he received a call from Detective Anderson. Anderson "proceeded to tell [Kurland] that he was not permitted to call Ms. McHugh and that he instructed Ms. McHugh not to speak with the investigator." According to the report, Anderson advised Kurland that "Ms. McHugh was a [S]tate witness and that any questions regarding Ms. McHugh had to go through the Assistant Prosecutor."

Kurland prepared a second report, also dated April 2, 2009, regarding his telephone call to Captain Stukowsky of the Sayreville Police Department. Kurland stated Stukowsky told him that the Assistant Prosecutor advised against giving a "go ahead" for interviews with five patrolmen as he "did not feel that it would necessarily be beneficial for the prosecution." Two of those patrolmen, Poetsch and Mader, later testified at trial.

Defendant argued that the State's actions were akin to witness tampering. After reading the reports, the judge stated,

The law does not require a witness to speak to anybody. Doesn't even actually require a witness to speak to the State. . . . But the law does require that the parties not instruct their potential witnesses that they shouldn't speak to investigators from . . . adversaries.

I don't know what the conversation was. . . . But that report clearly seems to indicate that Detective Anderson operated on the assumption and belief that he had a right to instruct potential witnesses not to speak to defense investigators. That is simply wrong. He has a right to say you don't have to, has a right to say your choice, but he cannot say don't. And I'd like Detective Anderson in here tomorrow.

The prosecutor objected, stating the judge was "taking the word . . . of an investigator of the Public Defender's Office" who had also made allegations against him. The judge clarified that he did not intend to take testimony from the officers or subject them to questioning by any party:

My intention is to explain to them what the law is and to send them on their way. It's not my intention to interfere in the process. But if the statement of [the defense] investigator is accurate, then the detective does not understand his obligation.

The prosecutor later told the judge that, in a telephone conversation over the lunch break, Anderson denied having any conversation with the defense investigator. The judge asked defense counsel to ascertain the correct identity of the person who spoke to the investigator because "if it's not this officer, this officer shouldn't be required to come in here and listen to the Court lecture." There was no hearing or "lecture" on the following day.

At oral argument on defendant's motion in June 2009, defendant advised the court that Kurland was available and asked the court to conduct a hearing. The prosecutor repeated Anderson's denials that it "[m]ust have been another officer. It wasn't him." Notably, the prosecutor did not deny that a law enforcement officer had the conversation described by Kurland in his report.

The court denied defendant's motion to dismiss, stating:

I do not find there is any conduct or any hearing needed by this Court. I am in receipt of a report that states the captain informed the investigator he spoke to [the] Assistant Prosecutor responsible for the case and the prosecutor suggested against it because he did not feel it would necessarily be beneficial for the prosecution. Based upon this information the captain made a supervised decision against interviews.

I don't know the captain has a right to tell people not to speak to folks. You will have every opportunity to cross[-]examine each party when they testify as to whether or not they believe both sides are entitled to open, fair investigation and did they elect not to speak to your investigator and the jury can determine whether or not that impacts on their credibility and believability but the reality is people don't have an obligation to speak to anyone. They can choose to remain silent and they could choose not to discuss the matter and, quite frankly, if that's what they did in this case I think your best remedy is cross[-]examination during the trial itself.

At a subsequent argument on pretrial motions, the Assistant Prosecutor described his practice regarding advice to witnesses:

I advise them that they don't have to. That ... they can if they want, but ... it doesn't necessarily mean they're going to help the ... case, et cetera. You know and things like that. I said, I can't tell you not to ... talk to somebody, but you certainly don't have to.

Defendant responded there would be no issue if that was what was said to McHugh but she "was specifically told not to after she knows that her . . . entire deal was based . . . on what this cop did for her, or what the State is doing for her." [2]

Trial commenced in April 2010. Defendant proceeded pro se with standby counsel. The State presented testimony from six members of the Sayreville Police Department: Officers Scott Poetsch, James Mader, and Henry Wortley; Detectives Matthew Bandurski and Richard Belotti; and Sergeant Sean O'Donnell. In addition, the State presented testimony from McHugh, Patel, and Jagdish Sheth, the owner of the convenience store.

McHugh testified that, on December 12, 2007, defendant called her at about 7:30 p.m. and said he "did a caper." The next day, they had a conversation about the robbery and he said "he robbed the Indian store." McHugh said defendant described the robbery to her as follows: He went to the lottery machine and "asked the guy to take out the money from the lottery" and said he had either "a hammer or a nail gun." "The guy laughed at him" and "wasn't going to give him the money" but defendant said "I'm not playing around. Give me the money." Defendant said he "got $500" and gave her $100. McHugh also confirmed that defendant smoked Marlboro Red cigarettes.

The defense presented two witnesses. Mary Sparkman, an Assistant Prosecutor in Mercer County, represented defendant in 2008. She testified that McHugh contacted her in February 2008, inquiring about defendant's plea offer, and stated "that it was her

---

[2] Defendant and McHugh were apparently co-defendants in an unrelated case in which McHugh was charged with possession of heroin and drug paraphernalia. McHugh's application for pretrial intervention (PTI) had been rejected by the Prosecutor. After defendant entered a guilty plea in that matter and McHugh gave a statement to the police in this matter, she was admitted into PTI. In addition, McHugh had a second charge for driving under the influence pending. She testified that this charge was dismissed and she was allowed to plead guilty to careless driving after Detective Anderson spoke to the municipal prosecutor on her behalf.

fault[ ] that [defendant was] facing what [he was] facing." The defense also called Dr. Steven Penrod, a professor of psychology who was qualified as an expert witness as to eye witness identification. Defendant did not elect to testify.

The judge dismissed the aggravated assault charge (count four). The jury acquitted defendant of count one as charged, convicting him of the lesser-included offense of second-degree robbery; acquitted him of counts two and three; and convicted him of third-degree theft (count five). The jury found that the value of property exceeded $500 but was less than $75,000. The jury also acquitted defendant of the certain-persons offense.

The trial court granted the State's motion for an extended term, merged count five into count one, and sentenced defendant on count one to twelve-years incarceration with an 85% period of parole ineligibility pursuant to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.1, and three years of parole supervision, to be concurrent to a term defendant was serving. In addition, defendant received gap time credit of 531 days.

Defendant presents the following arguments for our consideration in his appeal:

*POINT I*

DEFENDANT DID NOT KNOWINGLY WAIVE HIS RIGHT TO COUNSEL BECAUSE THE COURT GRANTED HIS REQUEST WITHOUT A THOROUGH INQUIRY INTO HIS ABILITY TO REPRESENT HIMSELF—WITHOUT INFORMING HIM OF THE ELEMENTS OF THE OFFENSES CHARGED, THE MAXIMUM SENTENCE HE WAS FACING, AVAILABLE DEFENSES, OR OTHER FACTS CRITICAL TO A KNOWING AND INTELLIGENT WAIVER OF COUNSEL. *U.S. CONST.* AMEND. VI; *N.J. CONST.* ART. I, PAR. 10.

*POINT II*

DEFENDANT'S RIGHTS TO PRESENT A COMPLETE DEFENSE, TO DUE PROCESS, AND TO A FAIR TRIAL WERE VIOLATED WHEN A DETECTIVE INSTRUCTED A KEY STATE'S WITNESS NOT TO SPEAK WITH THE DEFENSE PRIOR TO TRIAL. *U.S. CONST.* AMENDS. V, VI AND XIV; *N.J. CONST.* ART. I, PARS. 1, 9 AND 10.

*POINT III*

DEFENDANT SHOULD BE GIVEN 441 DAYS OF JAIL CREDIT PURSU-
ANT TO *STATE V. HERNANDEZ*.[3]

## I.

██ Defendant first argues that the trial judge failed to provide
him with specific information necessary for him to make a know-
ing and intelligent waiver of his right to counsel. We agree.

The Supreme Court has provided explicit instructions on the
manner in which a trial court must evaluate whether a defendant
has made a knowing and intelligent waiver of the right to counsel.
*State v. Crisafi*, 128 *N.J.* 499, 509–12, 608 *A.*2d 317 (1992). The
inquiry requires both explicit advice to the defendant and the
posing of open-ended questions to ascertain his ability and under-
standing. *See State v. Reddish*, 181 *N.J.* 553, 593, 859 *A.*2d 1173
(2004); *Crisafi, supra*, 128 *N.J.* at 509–12, 608 *A.*2d 317.

██ In *Crisafi*, the Court explained that trial courts have a duty
to ensure that the waiver of counsel is knowing and voluntary by
advising defendants "of the dangers and disadvantages of self-
representation" and exploring specific topics with the defendant.
*Id.* at 510, 608 *A.*2d 317. The trial court must inform a defendant
of the nature of the charges; the statutory defenses to those
charges; the possible range of punishment; the technical prob-
lems he may encounter; the risks if his defense is unsuccessful;
the requirement that the defense be conducted in accordance with
the rules of evidence and criminal procedure; that a lack of
knowledge of law may impair the ability to self-represent; and
that the effectiveness of the defense may be adversely affected by
acting as both attorney and accused. *Id.* at 511–12, 608 *A.*2d 317.
The Court also explained that the trial court must advise the

---

3 208 *N.J.* 24, 26 *A.*3d 376 (2011).

defendant that "it would be unwise not to accept the assistance of counsel." *Id.* at 512, 608 *A.*2d 317.

In *Reddish, supra,* the Court amplified its directive, instructing courts to "engage in a penetrating examination of the knowingness and intelligence" of a defendant's request to waive counsel. 181 *N.J.* at 593, 859 *A.*2d 1173. The Court encouraged trial courts to explore subjects beyond those specifically identified in *Crisafi,* including:

> whether defendant will experience difficulty in separating his roles as defendant and counsel; whether defendant understands that he not only has the right not to testify, but also the right not to incriminate himself in any manner; whether he understands that he could make comments as counsel from which the jury might infer that he had knowledge of incriminating evidence (and the difficulty in avoiding such comments); and whether he fully understands that if he crosses the line separating counsel from witness, he may forfeit his right to remain silent and subject himself to cross-examination by the State.
>
> [*Id.* at 594, 859 *A.*2d 1173.]

The Court stated explicitly, "the trial court also must advise defendant that if the court allows him to represent himself, he will thereby waive any and all later claims that his self-representation constituted ineffective assistance of counsel." *Ibid.; see also State v. King,* 210 *N.J.* 2, 19, 40 *A.*3d 41 (2012). Further, as a general rule, the trial court should cover these considerations with the defendant in one proceeding. *Ibid.; State v. DuBois,* 189 *N.J.* 454, 469, 916 *A.*2d 450 (2007).

The trial judge did not follow this procedure. Over the course of several court appearances, the trial judge did advise defendant of the nature of the charges and his possible exposure. He questioned defendant and counsel as to defendant's understanding of the procedure and ability to represent himself and advised defendant against self-representation. The judge made a preliminary assessment to give defendant an opportunity to demonstrate his ability to represent himself at the *Wade* hearing, with the determination as to whether he could proceed pro se at trial to follow. Based upon defendant's performance at the *Wade* hearing and without any further advice or inquiry, the judge permitted

him to represent himself at trial, with the assistance of standby counsel.

■ Defendant's apparent proficiency[4] does not satisfy the inquiry. The goal of the required examination "is not to explore a defendant's familiarity with 'technical legal knowledge[.]' " *King, supra,* 210 *N.J.* at 19, 40 *A.*3d 41 (quoting *Reddish, supra,* 181 *N.J.* at 595, 859 *A.*2d 1173). "Rather, 'the trial court must question defendant to ascertain whether he actually understands the nature and consequences of his waiver.' " *Ibid.* (quoting *Reddish, supra,* 181 *N.J.* at 594, 859 *A.*2d 1173). In this case, as defendant argues on appeal, among the advice omitted was that defendant waived any argument regarding ineffective assistance of counsel claims if he represented himself.

The failure to provide such advice will generally require reversal of a conviction. *Crisafi, supra,* 128 *N.J.* at 512, 608 *A.*2d 317. There are, however, rare instances where a reversal is not required.

> The purpose of giving a defendant an extensive warning is to ensure that he or she understands the consequences of the waiver. Thus, the ultimate focus must be on the defendant's actual understanding of the waiver of counsel. In the exceptional case, if the record indicates that the defendant actually understood the risks of proceeding pro se, a waiver may suffice. This limited exception, when the absence of a searching inquiry will not undermine the waiver of counsel, applies only in rare cases.
>
> [*Id.* at 512–13, 608 *A.*2d 317 (internal citation omitted).]

*See also King, supra,* 210 *N.J.* at 20, 40 *A.*3d 41.

Although defendant demonstrated a familiarity with the process of presenting a defense, the record fails to demonstrate that he was adequately appraised of the specific dangers and disadvantages of self-representation. Under the circumstances, the record fails to establish that defendant knowingly and voluntarily waived his right to counsel at trial. As this case does not fall within those

---

[4] We note that the trial court's evaluation was not unreasonable since the defendant was acquitted of multiple counts by the jury.

rare exceptions to the general rule, reversal of defendant's convictions is required.

## II.

■ We next turn to defendant's argument that his right to present a complete defense was violated by the State's alleged interference with his ability to interview prosecution witnesses.

■ "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " (*Crane v. Kentucky,* 476 *U.S.* 683, 690, 106 *S.Ct.* 2142, 2146, 90 *L.Ed.*2d 636, 645 (1986)); *see also State v. Garron,* 177 *N.J.* 147, 168, 827 *A.*2d 243 (2003) ("The Federal and New Jersey Constitutions guarantee criminal defendants 'a meaningful opportunity to present a complete defense.' "), *cert. denied,* 540 *U.S.* 1160, 124 *S.Ct.* 1169, 157 *L.Ed.*2d 1204 (2004); *State v. Budis,* 125 *N.J.* 519, 531, 593 *A.*2d 784 (1991). This right is safeguarded, in part, by a "constitutionally guaranteed access to evidence." *California v. Trombetta,* 467 *U.S.* 479, 485, 104 *S.Ct.* 2528, 2532, 81 *L.Ed.*2d 413, 419 (1984) (quoting *United States v. Valenzuela–Bernal,* 458 *U.S.* 858, 867, 102 *S.Ct.* 3440, 3446, 73 *L.Ed.*2d 1193, 1203 (1982)).

It is well-established that access to witness testimony falls within this constitutional guarantee. Our Supreme Court held that a "defendant's due process rights are violated when there is substantial government interference with a defense witness'[s] free and unhampered choice to testify[.]" *State v. Feaster,* 184 *N.J.* 235, 251, 877 *A.*2d 229 (2005) (internal quotation marks omitted). In *Feaster,* a key prosecution witness recanted his trial testimony and was slated to testify at the defendant's post-conviction relief hearing. After a veiled threat to prosecute him for perjury, the witness did not testify. The Court held that "the State may not use threats or intimidating tactics that substantially interfere with a witness's decision to testify for a defendant. Such conduct, even if motivated by good faith, cannot be tolerated[.]" *Id.* at 262, 877 *A.*2d 229. The Court has also found such constitutionally prohibited interference in plea agreements that required

co-defendants not to testify for defendants.[5] *State v. Fort,* 101 *N.J.* 123, 131, 501 *A.2d* 140 (1985) (noting the "search for truth" is not well served when the State attempts to fortify its case "by sealing the lips of witnesses").

Our courts' holdings and analyses mirror those in federal cases where government action has thrown roadblocks to the testimony of witnesses who would be favorable to the defendant. *See, e.g., Washington v. Texas,* 388 *U.S.* 14, 17–18, 87 *S.Ct.* 1920, 1922–23, 18 *L.Ed.*2d 1019, 1022–23 (1967) (holding two state statutes that prohibited co-indictees from testifying for one another violated the Sixth Amendment); *Newell v. Hanks,* 283 *F.*3d 827, 837–838 (7th Cir.2002) (prosecutor offered to dismiss criminal charge against witness if he did not testify for defense); *United States v. Vavages,* 151 *F.*3d 1185, 1191 (9th Cir.1998) (prosecutor repeatedly warned attorney for alibi witness that if she testified falsely, the government could bring perjury charges against her and withdraw from the plea agreement in her own criminal case); *Freeman v. Georgia,* 599 *F.*2d 65, 69 (5th Cir.1979) (police detective concealed whereabouts of witness); *Lockett v. Blackburn,* 571 *F.*2d 309, 313–14 (5th Cir.1978) (prosecutor sent witnesses out of state before trial); *United States v. Henricksen,* 564 *F.*2d 197, 198 (5th Cir. 1977) (invalidating a no-testify plea agreement); *United States v. Morrison,* 535 *F.*2d 223, 225–28 (3d Cir.1976) (prosecutor repeatedly warned prospective defense witness about possibility her testimony would lead to drug charges or to perjury charges if she testified falsely).

■ The fact that McHugh and the police officers testified and were subject to cross-examination does not resolve the due process issue. The right to present a complete defense encompasses access to adverse witnesses during the investigation phase of the defense. *See Fenenbock v. Dir. of Corr. for Cal.,* 681 *F.*3d 968, 974

---

[5] Judicial interference with a witness's decision to testify can also violate the defendant's rights. *See, e.g., Webb v. Texas,* 409 *U.S.* 95, 98, 93 *S.Ct.* 351, 353, 34 *L.Ed.*2d 330, 333 (1972); *State v. Jamison,* 64 *N.J.* 363, 375, 316 *A.2d* 439 (1974).

n. 5 (9th Cir.) (assuming that "the right to have access to adverse witnesses before trial ... is necessarily implied by the right to a 'meaningful opportunity to present a complete defense' "), *amended*, 692 *F*.3d 910 (9th Cir.2012); *United States v. Carrigan*, 804 *F*.2d 599, 603 (10th Cir.1986) ("[W]itnesses in a criminal prosecution belong to no one, and[,] subject to the witness[es'] right to refuse to be interviewed, both sides have the right to interview witnesses before trial."); *United States v. Scott*, 518 *F*.2d 261, 268 (6th Cir.1975) (stating a "defendant is entitled to have access to any prospective witness although such right of access may not lead to an actual interview"); *Gregory v. United States*, 369 *F*.2d 185, 188 (D.C.Cir.1966) (noting that "elemental fairness and due process" require that the defendant in a criminal proceeding have the opportunity to question witnesses); *People v. Ray*, 252 *P*.3d 1042, 1048 (Colo.2011) ("[B]oth the prosecution and defense have an equal right to interview witnesses because they do not 'belong' to either party.").

In *Gregory, supra*, witnesses refused to talk to defense counsel after the prosecutor told them not to do so unless he was present. *Id.* at 187. In describing the inequity of such conduct, the court stated,

> [N]othing in the law ... gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses except in his presence. Presumably the prosecutor, in interviewing the witnesses, was unencumbered by the presence of defense counsel, and there seems to be no reason why defense counsel should not have an equal opportunity to determine, through interviews with the witnesses, what they know about the case and what they will testify to.
>
> [*Id.* at 188.]

Although no evidence was suppressed, the court found the prosecutor's advice to the witnesses suppressed "the means by which the defense could obtain evidence." *Id.* at 189. Without "a fair opportunity for interview[,]" defense counsel "could not know what the eye witnesses ... were to testify to or how firm they were in their testimony[.]" *Ibid.* The court concluded that this interference denied the defendant a fair trial. *Ibid.*

Within the context of a different legal issue, our Supreme Court declined to impose a duty on law enforcement officials to consent to defense interviews. *State v. Marshall,* 148 *N.J.* 89, 284, 690 *A.*2d 1, *cert. denied,* 522 *U.S.* 850, 118 *S.Ct.* 140, 139 *L.Ed.*2d 88 (1997). However, the Court implicitly acknowledged a defendant's right of access to witnesses, stating, "Of course, if the State were to interfere with a defendant's ability to answer criminal charges by using its influence to discourage witnesses from speaking to counsel or counsel's agents, a very different case would be presented." *Ibid. See also State v. Murtagh,* 169 *P.*3d 602, 608 (Alaska 2007) (finding certain provisions of the Alaska Victims' Right Act of 1991, Alaska Stat. §§ 12.61.100 to –.150, were unconstitutional because they interfered with criminal defense investigations without adequate justification). *Cf. Coppolino v. Helpern,* 266 *F.Supp.* 930, 935–36 (S.D.N.Y.1967) (holding that medical examiner's order to toxicologist not to speak with accused, his counsel or experts, violated defendant's constitutional rights); *but see Fenenbock, supra,* 681 *F.*3d at 970–71, 974 (finding no violation of constitutional rights when an agency unrelated to the prosecution, acting in the interest of a witness who was a minor, denied pretrial access to eight defendants).

▮ The importance of the opportunity for such access to effective trial preparation for both the prosecutor and defense counsel is beyond cavil. *See* Melanie D. Wilson, *A Discourse on the ABA's Criminal Justice Standards: Prosecution and Defense Functions: Quieting Cognitive Bias with Standards for Witness Communications,* 62 *Hastings L.J.* 1227, 1228 (2011); ABA Standards for Criminal Justice, *Defense Function,* 4–4.1 (3d ed. 1993); Commentary to ABA Standards for Criminal Justice, *Prosecution Function,* 3–3.1(d) (3d ed. 1993) ("It is not only proper but it may be the duty of the prosecutor and defense counsel to interview any person who may be called as a witness in the case[.]"). Indeed, inadequate pretrial investigation may give rise to a claim of ineffective assistance of counsel. *State v. Preciose,* 129 *N.J.* 451,

464, 609 *A*.2d 1280 (1992); *State v. Russo,* 333 *N.J.Super.* 119, 139, 754 *A*.2d 623 (App.Div.2000).

Therefore, just as substantial interference with a witness's decision to testify constitutes a violation of a defendant's constitutional rights, such interference with a witness's decision to grant or deny an interview to the defense also deprives a defendant of his right to present a complete defense. We note that the protected right is the opportunity for pretrial access; it is not a guarantee of pretrial access.

 The defendant's right of access is "co-equal[ ] with the witness['s] right to refuse to say anything." *Fenenbock, supra,* 681 *F*.3d at 974. Thus, no violation of the defendant's right occurs when "a witness chooses voluntarily not to be interviewed[.]" *Ibid.* The violation occurs when the prosecution impermissibly interferes with the witness's voluntary decision "to grant or refuse pretrial access." [6] *Ibid.; see also United States v. Bryant,* 655 *F*.3d 232, 238 (3d Cir.2011) ("If the prosecution impermissibly interferes with the defense's access to a witness during a criminal trial, that conduct violates due process insofar as it undermines the fundamental fairness of the proceeding."); *United States v. Slough,* 669 *F.Supp.*2d 51, 56 (D.C.Cir.2009).

 Not every action by the prosecution coupled with a witness's refusal to be interviewed will constitute substantial interference with a witness's choice in deciding whether to speak to the defense. *See Scott, supra,* 518 *F*.2d at 268 ("[W]hen claiming a denial of due process, a defendant must make a showing of more than just the witness['s] inaccessibility."); *Slough, supra,* 669 *F.Supp.*2d at 55–56 (finding no constitutional violation and reject-

---

[6] The prohibition against interfering with a witness's decision to speak to the defense is included in ABA Standards for Criminal Justice, *Prosecution Function,* 3–3.1(d) (3d ed. 1993), which states, "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. A prosecutor should not advise any person or cause any person to be advised to decline to give the defense information which such person has the right to give."

ing defendants' argument that the government's unwillingness to provide security to the defense team would effectively deny them access to witnesses and evidence in Iraq). In *Bryant, supra,* the grand jury subpoena issued to witnesses included a "request" that the witness not disclose the existence of the subpoena because disclosure "could obstruct and impede a criminal investigation into alleged violations of federal law." 655 *F.*3d at 237–38. Although the Court of Appeals discouraged this practice in the future, it found no violation of the defendants' rights, noting "an important difference between requesting nondisclosure and discretion on the part of witnesses and artificially restricting defense counsel's access to witnesses by, for example, instructing the latter not to communicate with the former." *Id.* at 238. Aside from the request on the subpoena, the government "took no affirmative steps to restrict or stop witnesses from conferring with the defense[,]" and the witnesses declined to speak to defense counsel on the advice of their own counsel. *Ibid.*

The circumstances of this case do not require us to consider the parameters of permissible communications a prosecutor may have with a witness regarding interviews by the defense. However, the commentary to ABA Standards for Criminal Justice, *Prosecution Function,* 3–3.1(d) (3d ed. 1993), provides the following guidance:

> In the event a witness asks the prosecutor or defense counsel, or a member of their staffs, whether it is proper to submit to an interview by opposing counsel or whether it is obligatory, the witness should be informed that there is no legal obligation to submit to an interview. It is proper, however, and may be the duty of both counsel in most cases to interview all persons who may be witnesses and it is in the interest of justice that witnesses be available for interview by counsel. It is proper for a prosecutor to tell a witness that he or she may contact the prosecutor prior to talking to defense counsel. The prosecutor may also properly request an opportunity to be present at defense counsel's interview of a witness, but may not make his or her presence a condition of holding the interview. It is also proper to caution a witness concerning the need to exercise care in subscribing to a statement prepared by another person.

In this case, the trial judge recognized that if the allegations of the defense investigator were true, the detective acted improperly. Kurland reported that the detective prohibited him from even calling McHugh; stating he had instructed her not to speak to the

investigator and that any questions to her had to go through the Assistant Prosecutor. If these allegations are true, it was the State, and not the witness, who made the decision to deny defendant access. Such an arrogation of the witness's right to choose whether to grant or deny access would constitute a denial of defendant's opportunity to present a meaningful defense.

However, the trial judge decided no hearing was needed to determine whether the allegations were true and even abandoned his initial plan to "lecture" the detective on proper procedure. Instead, he repeatedly invoked the right of the witness to refuse access and stated defendant could cross-examine the witnesses on their refusal to speak to the defense investigator.[7]

The allegations here presented a genuine factual issue regarding prosecutorial interference with access that could only be resolved by an evidentiary hearing. Upon remand, in the event that defendant is denied access to interview witnesses, an evidentiary hearing must be conducted.

If a hearing is necessary, the trial judge must determine what was said to Kurland and to McHugh. The judge must further determine whether the witness voluntarily chose to deny access or whether there was substantial government interference with her "free and unhampered choice" to grant or deny the defense an interview, *see United States v. Goodwin,* 625 *F.*2d 693, 703 (5th Cir.1980), by, *e.g.,* "using its influence to discourage witnesses from speaking to counsel or counsel's agents[.]" *Marshall, supra,* 148 *N.J.* at 284, 690 *A.*2d 1. Whether the State's representative acted in good faith is irrelevant to the inquiry. *See Feaster,*

---

[7] Although *N.J.R.E.* 607 authorizes the use of extrinsic evidence to show the bias of a witness, it was the prosecution and not the witness that allegedly denied access to defendant. "Utterances indirectly indicating fear, ill-will, excitement, or other emotion *on the part of the speaker* are . . admissible [as to] a witness whose bias is to be ascertained." *State v. Gorrell,* 297 *N.J.Super.* 142, 150, 687 *A.*2d 1016 (App.Div.1996)(emphasis added). Therefore, even if it were permitted, the opportunity to impeach any witness for denying access to the defense would be of dubious value.

*supra,* 184 *N.J.* at 254–55, 259, 261–62, 877 *A.*2d 229. If the trial judge determines that the State has substantially interfered with defendant's right to access the witness, he must then consider what remedy is appropriate.

Kurland's second report also requires further inquiry by the court. He stated that a police captain declined his request to interview police witnesses based upon the Assistant Prosecutor's advice that it would not be "beneficial for the prosecution." A defendant's right of access to law enforcement witnesses is the same as that to lay witnesses. The officers have no duty to consent to being interviewed by the defense, *Marshall, supra,* 148 *N.J.* at 284, 690 *A.*2d 1, but, as with lay witnesses, the prosecution may not interfere with the law enforcement witness's free choice. Therefore, although it was not improper for the Assistant Prosecutor to convey his assessment that interviews would not benefit the prosecution, the decision regarding interviews had to be made by the individual officers, and not a superior officer.

At various times when addressing the issue, the trial judge expressed the view that there was nothing he could do regarding defendant's complaint. Although the judge correctly stated he could not compel witnesses to speak to the defense against their will, he did not lack any authority to remedy the situation in the event he found the allegations to be true.

In *State v. Boiardo,* 172 *N.J.Super.* 528, 412 *A.*2d 1084 (Law Div.1980), the trial judge required that a government witness be produced for personal interview by defense counsel,[8] but fully informed "he has an absolute and personal right to either grant or deny the interview" and terminate it at will. *Id.* at 532, 412 *A.*2d 1084; *see also Carrigan, supra,* 804 *F.*2d at 601, 603 (holding that under the "extraordinary circumstances" found by the district

---

[8] In *Boiardo,* the trial judge refused to accept a proffered certification from the witness that he refused to speak to the defense. *Id.* at 531–33, 412 *A.*2d 1084. We do not decide whether a certification is an adequate communication of the witness's free choice.

court, it was not an abuse of discretion to order that defendants be permitted to take depositions of the witnesses in the presence of their attorney and the government's counsel); *but see R.* 3:13–2(a) (limiting circumstances for taking deposition of a material witness to cases where the witness is likely to be unable to testify at trial due to death or physical or mental incapacity); *cf. Feaster, supra,* 184 *N.J.* at 262–64, 877 *A.*2d 229 (discussion of available remedies when there has been substantial interference with a witness's decision to testify); *see also Morrison, supra,* 535 *F.*2d at 229 (same).

In sum, we reverse defendant's convictions and remand for further proceedings consistent with this opinion. It is therefore unnecessary for us to consider defendant's *Hernandez* argument regarding his sentence.

Reversed and remanded. We do not retain jurisdiction.